210 N.J. Super. 427 (1986)
510 A.2d 72
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LASCELLES CHUNG, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 20, 1986.
Decided May 21, 1986.
*429 Before Judges KING, O'BRIEN and SIMPSON.
Louis C. Esposito argued the cause for appellant.
Leslie F. Schwartz, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KING, P.J.A.D.
This case presents a claim that defense counsel was ineffective because he did not properly advise his client on the consequences of a guilty plea. On July 12, 1985 defendant Chung moved before the trial judge to withdraw a guilty plea to possession of marijuana with intent to distribute, on the basis that he had not been properly advised by trial counsel that a probable consequence of his August 30, 1982 guilty plea would be deportation. The motion was opposed by the State and denied by the trial judge.
This is the case history procedurally. On April 20, 1982 Chung was indicted by a Middlesex County Jury on four counts. The indictment charged him in the first count with possession of a controlled dangerous substance, contrary to N.J.S.A. 24:21-20a(4); the second count charged possession of a controlled *430 dangerous substance (CDS) with intent to distribute, contrary to N.J.S.A. 24:21-19a(1); the third count charged possession of a handgun without a permit, contrary to N.J.S.A. 2C:39-5b; the fourth count charged supplying false information to a police officer, contrary to N.J.S.A. 2C:28-4a.
On August 30, 1982 Chung entered a guilty plea before Judge Hamlin. Pursuant to a plea agreement, defendant entered a plea of guilty to count two of the indictment only. The remaining counts were dismissed and the maximum custodial exposure was set at five years. The plea agreement also allowed for appellate review of the trial judge's denial of Chung's suppression motion. R. 3:5-7(d).
On October 12, 1982 Chung was sentenced to eighteen months incarceration at the Middlesex County Adult Correction Center. The denial of defendant's suppression motion was affirmed by the Appellate Division. Chung has completely served his sentence in all respects.
On July 12, 1985 Chung moved to vacate his guilty plea on count two of the indictment on the ground that he had not been advised of possible deportation as a consequence of his plea. Chung sought to reform the plea agreement and asked permission to plead to a different count of the indictment and to be resentenced to time served. Chung's motion was denied on October 16, 1985. A motion to accelerate the disposition of this appeal was granted by this court.
These are the essential facts which led to the indictment, the plea agreement, and the subsequent motion for withdrawal of the guilty plea. Defendant is a non-resident immigrant. He was born in and is a citizen of Jamaica. He came to the United States ten years ago on a now-expired visitor's visa. He has at no time renewed his visitor status nor has he applied for residency status or citizenship.
On July 31, 1981 Chung was stopped in his automobile by a New Jersey State Trooper on the New Jersey Turnpike in Woodbridge Township. A search of the car uncovered 261.5 *431 pounds of marijuana and a semiautomatic weapon. As noted, Chung was sentenced to and has served his 18-month term. Because of this conviction for possession of a CDS with the intent to distribute, Chung is presently the target of a deportation proceeding initiated by the Bureau of Immigration and Naturalization under 8 U.S.C.A. § 1251(a)(11) which states that deportation is a potential collateral consequence for aliens "convicted of a violation of ... any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana...."
Under New Jersey law, prior to accepting a guilty plea the judge must be satisfied that there is a factual basis for the plea and that the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea. R. 3:9-2. After a plea has been accepted, a defendant's "claim to be relieved of its consequence must be weighed against the strong interests of the State in its finality." State v. Taylor, 80 N.J. 353, 362 (1979). Following sentencing, a motion to withdraw a guilty plea is only granted upon a showing of manifest injustice. R. 3:21-1. Moreover, where the plea is entered pursuant to a plea agreement, defendant's burden of establishing a plausible basis for vacation of his plea is heavier. State v. Rodriquez, 179 N.J. Super. 129, 136 (App.Div. 1981).
Factors pertinent to the determination of whether a defendant may withdraw a guilty plea include: the materiality of the mistake or omission, the resulting prejudice to defendant, the guilt of defendant, and the manner of entry of the plea. State v. Rodriguez, 179 N.J. Super. at 135-136. "To be material a mistake must relate to the penal consequences of a plea. A mistake as to a collateral consequence, while it may have a significant effect upon a defendant, is not material." State v. Riggins, 191 N.J. Super. 352, 355 (Law Div. 1983). The effect of defendant's plea on his immigration status has been considered a collateral consequence. State v. Reid, 148 N.J. Super. 263 (App.Div.), cert. den. 75 N.J. 520 (1977). See also United *432 States v. Sambro, 454 F.2d 918 (D.C. Cir.1971); United States v. Parrino, 212 F.2d 919 (2nd Cir.1954), cert. den. 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954); Tafoya v. State, 500 P.2d 247 (Alaska Sup.Ct. 1972). Manifest injustice is the general standard for withdrawal of a plea under R. 3:21-1. We are convinced that in this case no manifest injustice has been done to defendant Chung and affirm.
This case, however, does raise a novel issue in this jurisdiction regarding the effective assistance of counsel. This issue is gaining in importance in light of the increasing number of immigrants, legal and illegal, coming daily to our state and to the country as a whole. Several states have recently adopted legislation or issued judicial decisions in an attempt to clarify the issue of an alien's right to effective assistance of counsel in criminal proceedings. Thus, a review of New Jersey law on this issue and a review of the newly-emerging body of case law from other jurisdictions is presented.
The first question is whether it is the responsibility of the trial judge to inform a defendant of the possible consequence of deportation. New Jersey, unlike some other states, does not have any statute or rule requiring a judge to advise an alien defendant of the possible effects of a plea on his immigration status. Although Chung does not assert here that the judge should shoulder the burden of advising the alien of immigration ramifications before accepting his plea, it is interesting to note that since 1977 five states have enacted such legislation. See Cal.Penal Code § 1016.5; Mass. Gen. Laws Ann. ch. 278, § 29D; Ore.Rev.Stat. § 135.385; Conn. Gen. Stat., § 54-1j; Rev. Code Wash. § 10-40-200. These statutes demonstrate a growing awareness in some states that immigration consequences of criminal convictions are severe and that court protection for aliens is thought by some as necessary to fundamental fairness.
Three states' statutes, California, Massachusetts and Connecticut statutes provide remedies if the alien defendant is not *433 advised. For example, in California if an alien is not advised and can demonstrate that the conviction will have immigration ramifications, the court must allow withdrawal of the guilty plea without requiring a claim or showing of innocence. People v. Guzman, 116 Cal. App.3d 186, 172 Cal. Rptr. 34 (1981).
We are of the opinion that it is not the present responsibility of a New Jersey judge to advise a defendant of federal deportation consequences at the time of the taking of the guilty plea. Moreover, the trial judge's omission of this advice does not render a defendant's plea involuntary. In this particular case we follow the rule stated in State v. Reid, 148 N.J. Super. 263 (App.Div. 1977), cert. den. 75 N.J. 520 (1977), where we held that the judge has no duty to inform a defendant of the collateral consequence of deportation, but only of the penal consequences of the plea.
Deportation is a potential collateral consequence of certain convictions, subject to the immigration laws. See 8 U.S.C.A. § 1251(a)(11). Deportation is imposed by "another agency over which the trial judge has no control and for which he has no responsibility." Michel v. U.S., 507 F.2d 461, 465 (2d Cir.1974). Furthermore, it is generally recognized that a trial judge's failure to inform a pleading defendant of the potential collateral consequences does not invalidate his plea. Accord Edwards v. State, 393 So.2d 597 (Fla.App. 1981); Fruchtman v. Kenton, 531 F.2d 946 (9th Cir.1976); Michel v. U.S., 507 F.2d 461, 465 (2d Cir.1974); Tindall v. U.S., 469 F.2d 92 (5th Cir.1972); Hutchison v. U.S., 450 F.2d 930 (10th Cir.1971); Ladner v. Henderson, 438 F.2d 638 (5th Cir.1971).
The second question is whether an attorney has an obligation to advise clients of potential collateral consequences of a guilty plea. Specifically, defendant argues that the failure of an attorney to inform an alien of the possibility of deportation constitutes constitutionally ineffective assistance of counsel requiring a vacation of the guilty plea.
*434 The usual standards to be employed in evaluating a claim that a defendant's conviction should be overturned due to ineffective assistance of counsel, were set forth by Justice O'Connor in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Strickland the Court stated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." Id. 466 U.S. at 686, 104 S.Ct. at 2064. To establish ineffective assistance of counsel, defendant must satisfy a two-prong test. The Strickland two-part test also applies to challenges to guilty pleas based on ineffective assistance of counsel. See Hill v. Lockhart, ___ U.S. ___, ___, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985); State v. Rhoda, 206 N.J. Super. 584, 596-597 (App.Div. 1986).
Under Strickland, defendant must first show that his attorney's performance was deficient. This requires a showing that defense counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687, 104 S.Ct. at 2064. Judicial scrutiny of the attorney's performance must be highly deferential. Every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time. Id. at 689, 104 S.Ct. at 2065. Furthermore, an appellate court reviewing counsel's performance must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 690, 104 S.Ct. at 2066.
Defendant has failed to establish the first prong of the Strickland test. Chung does not contend that counsel supplied him with erroneous information concerning possible immigration ramifications. Cf. United States v. Russell, 686 F.2d 35 (D.C. Cir.1982) (withdrawal of plea allowed because prosecutor had made a misleading statement concerning possible deportation at time of plea); Strader v. Garrison, 611 F.2d 61 (4th *435 Cir.1979) (habeas corpus granted because attorney misadvised defendant concerning effect of new sentence on parole eligibility date); United States ex rel. Hill v. Ternullo, 510 F.2d 844 (2nd Cir.1975) (habeas hearing granted on issue of whether defendant had been misinformed by his attorney concerning possible maximum sentence); People v. Correa, 108 Ill.2d 541, 92 Ill.Dec. 496, 485 N.E.2d 307 (1985) (attorney misinformed defendant that guilty plea would not result in defendant's deportation); State v. Nichols, 71 N.J. 358 (1976) (defendant allowed to vacate plea where court, prosecutor and defense counsel misinformed defendant as to the possible sentence if convicted on both charges). In the present case, defense counsel never specifically advised Chung as to the immigration consequences of his plea. Moreover, rather than supplying misinformation, defense counsel here had notified Chung before the guilty plea that his immigration status could become "sticky." Chung's defense counsel stated in his affidavit
5. At the conclusion of the Motion to Suppress my client the defendant-appellant, and I were approached by officers of the Immigration Service and were advised that there were problems concerning his immigration status.
6. While the defendant-appellant was advised by me that his immigration situation would become "sticky" due to this case. I never advised him that a plea of guilty would result in his deportation.
7. The reason for the lack of that advice was that I was not sure of how the plea would affect his immigration status and never advised concerning it.
Therefore, we conclude that Chung, who surely was aware of his illegal immigrant status, was also aware of possible immigration problems. Chung should have sought advice from competent immigration counsel. There was no actual misrepresentation by Chung's defense counsel and a claim of ineffective assistance cannot be supported on these facts.
The second prong of the Strickland test requires that defendant prove the deficient performance affected the outcome of the plea process. Hill v. Lockhart, supra. To satisfy this step of the test, defendant must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to *436 trial." ___ U.S. at ___, 106 S.Ct. at 370, 88 L.Ed.2d at 210. Defendant here failed to produce any evidence to satisfy his burden under step two of the Strickland test.
Chung's failure to inquire further as to the deportation consequences of his plea, after being advised that his immigration status was "sticky", undermines the present argument that he would not have entered the guilty plea had he known he would be deported. Indeed, Chung did not seek a trial when he requested Judge Hamlin to vacate his plea. Rather, he asked only that the judge reform his guilty plea and apply it to one of the other counts of the indictment. In fact, Chung does not even allege on this appeal that he would have insisted on going to trial had he been aware of the deportation consequences. We perceive that he simply wants to manipulate the criminal justice system to his personal advantage at this late date. Neither a defendant nor his offense "should be fictionalized for purposes of sentence." State v. Marzolf, 79 N.J. 167, 180 (1979).
Chung has simply failed to show any "prejudice" even assuming that his counsel's performance was deficient. His motion to suppress was denied by the Law Division judge and affirmed by this court. Chung freely and openly admitted at the plea hearing his guilt of the offense of possession of a substantial quantity of a CDS with intent to distribute. He has never advanced any possible defense to this charge. His application to withdraw his plea does not contest the truthfulness of his guilt of the offense. Vacation of this plea and a subsequent trial would almost inevitably result in Chung's conviction and deportation. Moreover, Chung has no right to reformation of his plea agreement, especially in the absence of the State's consent and since he received a substantial benefit from the plea agreement. If convicted on all four counts, he could have been exposed to an eleven and one-half year prison term and a $30,000 fine. Instead, he received an eighteen month term.
*437 This case is factually similar to State v. Reid, 148 N.J. Super. 263 (App.Div.), certif. den. 75 N.J. 520 (1977). There the defendant was a native of Jamaica and was the subject of deportation proceedings because of his conviction for possession of marijuana. Defendant filed a petition for post-conviction relief seeking to vacate his conviction and asked to be allowed to change his plea to possession of a weapon. At a hearing, the defendant stated that he would not have pleaded guilty to the marijuana charge if he had known that it would subject him to deportation. The trial judge found that the defendant freely and openly admitted his guilt at the time of the entry of his plea. We held that the defendant's lack of understanding of the collateral consequences pertaining to his immigration status was not an adequate reason to vacate the plea since deportation was a collateral consequence and did not relate to the penal consequences of the plea. Appellant in Reid never alleged ineffectiveness of trial counsel.
While there may be statutory and case law in other jurisdictions which require advice as to the possibility of deportation in the context of plea proceedings, that is not the law in our state at present. In the absence of any such legislative action or other precedent, we adhere to Reid especially in view of the three-year time interval between defendant's guilty plea and the motion to retract it and the complete service of his sentence. However, defendant does make a decent argument by analogizing that if a criminal defendant cannot be expected to know his constitutional rights and must be advised by court and counsel, an alien cannot be expected to know complex immigration matters as they relate to our criminal law. Thus, defendant argues that the mere labelling of "potential immigration problems" as collateral should not absolve a criminal defense attorney from researching the law applicable to his client's specific problem and from advising him of the effects of his plea. If attorneys are aware of the related provisions concerning a defendant's immigrant status, they may try to avoid deportation consequences either by carefully selecting the statute *438 to which the defendant pleads guilty, or by taking the case to trial, or by seeking a timely recommendation against deportation from the judge as provided for in 8 U.S.C.A. 1251(b)(2).[1] Under this statute a judicial recommendation against deportation in the appropriate case is binding upon the Immigration and Naturalization Service (INS) and effectively precludes automatic deportation. Such a judicial recommendation, however, is not available in narcotics cases. See 8 U.S.C.A. § 1251(b)(2); this is why defendant sought to reform his guilty plea here to apply it to the non-narcotics counts.
Several states have held that while deportation is a collateral consequence, it is nevertheless a cognizably serious consequence. See People v. Pozo, 712 P.2d 1044 (Colo. App. 1985) (Metzger, J.), cert. granted January 13, 1986 and argument pending; People v. Correa, 108 Ill.2d 541, 92 Ill.Dec. 496, 485 N.E.2d 307 (1985); Edwards v. State, 393 So.2d 597 (Fla.App. 1981); Michel v. United States, 507 F.2d 461, 465 (2d Cir.1974) (where his client is an alien, counsel and not the court has the obligation of advising him of his particular position as a consequence of his plea).
In the most recent case, People v. Pozo, supra, the Colorado Court of Appeals put counsel on notice that failure to advise alien clients fully as to the probable deportation consequences of guilty pleas will be viewed as ineffective assistance of counsel. In Edwards v. State, 393 So.2d 597 (Fla.App. 1981), the Florida Court of Appeals held that failure of counsel to advise a criminal defendant of possible immigration consequences *439 constituted ineffective assistance. Edwards is also factually similar to the case at bar. The defendant was a Jamaican citizen who claimed that his plea of guilty to charges of selling and possessing marijuana was involuntarily because the judge failed to advise him at the plea proceeding of the possible collateral consequence of deportation and that the failure of his counsel to advise him of this consequence rendered his counsel ineffective. The Florida court found that it was not the responsibility of the judge to advise a defendant of federal deportation consequences because judges are not required to advise pleading defendants of collateral consequences. But, the Florida court went on to hold that
... labelling the consequence as collateral does not diminish its significance. Indeed, the penalty of deportation has been recognized as often far more extreme than the direct consequences which may flow from a plea of guilty to an offense. Deportation has been said to be "the equivalent of banishment", Fong Haw Tan v. Phelan, 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433 (1947); "a savage penalty," "a life sentence of exile," Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951) (Jackson, J., dissenting); an event that results in "loss of property or life; or of all that makes life worthwhile," Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938 (1922).... While we may not impose upon the trial court the obligation to advise the accused of this consequence ... its "collateralness" is immaterial in measuring the effective assistance of counsel. Id. at 598, 599.
In Commonwealth v. Wellington, 305 Pa.Super. 24, 451 A. 2d 223 (1982), the Pennsylvania Superior Court also held that the judge had no duty to advise defendant before she entered the guilty plea of the possible deportation consequences. But the court did find that counsel does have a duty to give such advice so that a valid guilty plea will be knowingly, intelligently and voluntarily made. The court found that counsel was ineffective in failing to give defendant such advice. The court in United States v. Parrino, 212 F.2d 919 (2d Cir.1954), held that the fact that the defendant was not advised of the deportation consequence of his guilty plea did not make the plea subject to attack as being involuntary because such a consequence is only a collateral consequence. However, the Supreme Court of Illinois *440 in People v. Correa, 108 Ill.2d 541, 92 Ill.Dec. 496, 485 N.E.2d 307, 311 (1985), recently noted that in light of more recent case law "it is doubtful that this decision now reflects the present attitude of the Federal judiciary." United States v. Briscoe, 432 F.2d 1351 (D.C. Cir.1970) (under appropriate circumstances the fact that a defendant has been misled as to the consequences of deportability may render his guilty plea subject to attack).
The Illinois court in Correa, 108 Ill.2d 541, 92 Ill.Dec. 496, 485 N.E.2d 307 (1985), recognized that although deportation is collateral, it is a drastic consequence, one that is more severe than the penalty imposed by the court in response to the plea. Correa may be distinguished from the case before us in three important respects. First, the defendant in Correa contended that he first learned that his convictions were grounds for deportation after his release from the penitentiary when he was taken into custody by the INS. Here, defendant Chung was aware prior to pleading that there might be immigration problems.
Second, the court in Correa found that "unequivocal, erroneous, misleading representations" were made to the defendant in response to his specific inquiry. Id. 92 Ill.Dec. at 500, 485 N.E.2d at 311. The defendant was led to believe by his attorney that his guilty pleas would have no bearing on his status as an immigrant because his wife was an American citizen. Id. 92 Ill.Dec. at 498, 485 N.E.2d at 309. The Correa court applied the law of McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), to decide the issue of ineffective assistance of counsel. The court felt that the guidelines set out in Strickland, did not "fit neatly into the contour of this case" because Strickland pertained to the conduct of counsel in the adversary setting of a trial whereas here we are concerned with advice rendered to the defendant in a counselling capacity, "which advice was one of the factors underpinning defendant's *441 decision to plead guilty." Id. 92 Ill.Dec. at 499, 485 N.E.2d at 310. Therefore, the Correa court followed the standard set forth in McMann:
If the defendant's pleas were made in reasonable reliance upon the advice or representation of his attorney, which advice or representation demonstrated incompetence, then it can be said that the defendant's pleas were not voluntary; that is, there was not a knowing and intelligent waiver of the fundamental rights which a plea of guilty entails. Correa, 92 Ill.Dec. at 499, 485 N.Ed.2d at 310; see McMann, 397 U.S. at 770-771, 90 S.Ct. at 1448-1449, 25 L.Ed.2d at 773 (1970).
The Correa court did not consider the implications of passive conduct on the part of counsel in failing to discuss with a defendant the collateral consequences. The third distinction is that the effect of defendant's plea on his status as an immigrant was a prime factor in the defendant's decision as to whether or not to plead guilty. Id. 92 Ill.Dec. at 501, 485 N.E.2d at 312. We do not find any evidence in the record before us to support such a conclusion. Here the prospect of lenity was probably the prime factor motivating the plea.
We hold that Chung has not demonstrated that level of manifest injustice required to compel vacation of his guilty plea. R. 3:21-1. First, Chung has been residing here illegally and since he had made no effort to rectify that status, he was exposed to deportation in any event. Second, Chung was alerted to the potential immigration problems before pleading guilty. Because of his illegal status, virtually no action taken by his attorney would have been possibly more beneficial to Chung than what was done. Thus, Chung cannot demonstrate "prejudice" from his attorney's inconclusive immigration advice. Finally, Chung is asking us now, three and one-half years post-plea, to help him avoid deportation by permitting vacation of a guilty plea which he freely and openly made. Any action on our part at this late stage could be perceived as unwarranted meddling in federal immigration matters.
Affirmed.
NOTES
[1] As a practical matter, a simple question designed to ascertain the defendant's immigration status could be included on the LR-27 guilty plea form. A question to that effect would serve to decrease the number of potential problems and claims that could be raised since both the defendant's attorney and the judge would be on notice as to the defendant's status. The defendant then could be informed of the various consequences of his plea or told to find them out before he pleads.