[No. A035242. First Dist., Div. Two. Sept. 24, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DANILO SORIANO, Defendant and Appellant.

[No. A038232. First Dist., Div. Two. Sept. 24, 1987.]

In re DANILO SORIANO on Habeas Corpus.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Joan Y. Nosse, Deputy State Public Defender, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Dane R. Gillette and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ROUSE, Acting P. J.—Defendant Danilo Soriano appeals from denial by the superior court of his petition for a writ of error *coram nobis*. Defendant

sought to withdraw his guilty plea to one count of assault with a firearm (Pen. Code, § 245, subd. (a)(2))[1] and an admission that he had personally used a firearm in committing the offense (§ 12022.5). Defendant's writ petition alleged that he had received ineffective assistance of trial counsel because counsel failed to advise him adequately of the deportation consequences of his guilty plea.

Also before us is defendant's original petition for a writ of habeas corpus, likewise based on his claim of ineffective assistance. We confine our discussion of the facts to those which are necessarily involved in the resolution of issues raised on appeal.

On February 3, 1985, defendant was charged by complaint with one count of assault with a deadly weapon (§ 245, subd. (a)(2)) and with a personal firearm use enhancement (§ 12022.5). An attorney from the office of the San Francisco Public Defender was appointed to represent defendant. Defendant pleaded not guilty.

Pursuant to a plea bargain, defendant made his first guilty plea on February 22, 1985, but Superior Court Judge Campilongo refused to sentence defendant in accord with the terms of the plea negotiated with the district attorney.

On April 23, 1985, defendant again pleaded guilty and admitted the firearm enhancement. Defendant's guilty plea was negotiated in exchange for a recommendation from the district attorney that defendant be sentenced to two years for the assault and two years for the enhancement and that his total sentence of four years be suspended and defendant placed on three years' probation on condition he serve one year in county jail. (There were other probation conditions, but they are irrelevant to our discussion.) These were the same terms which had been rejected by the judge on defendant's first guilty plea. In accepting defendant's guilty plea the trial court cautioned him, using the precise language of section 1016.5, that his guilty plea could have immigration consequences. On May 21, 1985, defendant was sentenced by Judge Campilongo in accordance with the negotiated plea.

Defendant is a citizen of the Philippines who became a lawful permanent resident of this country on April 20, 1980. At the completion of defendant's one-year term in county jail he was placed on immigration hold by the Immigration and Naturalization Service (INS). While in INS custody he was served with an order to show cause why he should not be deported under the Immigration and Nationality Act. (8 U.S.C. § 1251(a)(4).) That

---

[1] Unless otherwise noted all subsequent statutory citations are to the Penal Code.

section makes deportable any alien who "is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more . . . ." The crime to which defendant pleaded guilty occurred on February 3, 1985, within five years of his entry into this country.

On April 28, 1986, defendant petitioned the superior court for a writ of error *coram nobis*. At the hearing on the writ defendant's trial counsel testified to events surrounding defendant's entry of the guilty plea. On May 12, 1986, the petition for the writ was denied. Defendant makes a timely appeal.

Contemporaneous with filing his reply brief in the appeal defendant filed a petition seeking habeas corpus relief within our original jurisdiction, and asking that the petition be consolidated with his appeal. We ordered the two matters considered together.

## I.

### *Coram Nobis*

As an initial matter we address defendant's contention on appeal that the trial court erred in denying his petition for a writ of error *coram nobis*.

■ A writ of *coram nobis* permits the court which rendered judgment "to reconsider it and give relief from errors of fact." (Witkin, Cal. Criminal Procedure (1963) Judgment & Attack in Trial Court, § 626, p. 616.) The writ will properly issue only when the petitioner can establish three elements: (1) that some fact existed which, without his fault or negligence, was not presented to the court at the trial and which would have prevented the rendition of the judgment; (2) that the new evidence does not go to the merits of the issues of fact determined at trial; and (3) that he did not know nor could he have, with due diligence, discovered the facts upon which he relies any sooner than the point at which he petitions for the writ. (*People* v. *Shipman* (1965) 62 Cal.2d 226, 230 [42 Cal.Rptr. 1, 397 P.2d 993]; *People* v. *Trantow* (1986) 178 Cal.App.3d 842, 845 [224 Cal.Rptr. 70].)

■ In his petition for the writ defendant contended that at the time he entered his guilty plea he did not know that the plea would subject him to deportation, and if he had understood that consequence of the plea he would not have made it.

Defendant relies upon *People* v. *Wiedersperg* (1975) 44 Cal.App.3d 550 [118 Cal.Rptr. 755]. In *Wiedersperg,* defendant was a resident alien who

had lived in this country since he was a child. Wiedersperg's attorney did not know of his client's alien status. (*Id.,* at p. 552.) Wiedersperg was found guilty after he submitted the issue of his guilt on the transcript of his preliminary hearing. (*Ibid.*) In support of his petition for a writ of *coram nobis* Wiedersperg submitted affidavits declaring that the trial court was unaware of his alien status and would not have rendered the judgment it did had it known he was not native born. (*Id.,* at p. 554.) The Court of Appeal decision was an extremely limited one. It found only that the trial court to whom the writ was directed had erred in finding it had no jurisdiction to consider the petition, and that Wiedersperg had stated facts which, if they could be proven, would permit issuance of the writ in the discretion of the trial court. (*Id.,* at p. 555)

Subsequent to the *Wiedersperg* decision, California enacted section 1016.5 which provides, in pertinent part: "Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (§ 1016.5, subd. (a).)

Under section 1018 a defendant may, prior to judgment, withdraw a guilty plea for good cause, and the decision to grant such a request lies in the sound discretion of the trial court. (*People* v. *Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 796 [114 Cal.Rptr. 596, 523 P.2d 636].) In this instance, of course, judgment had been entered and defendant could not avail himself of the provisions of section 1018.

The critical issue under section 1016.5 is whether a defendant has been advised that his guilty plea may have immigration consequences. The exact language of the warning given by the court is not crucial. Thus, a defendant who was warned of the possibility that he might be excluded from residency, denied naturalization or the right to reenter but who was not specifically warned of deportation was adequately advised. (*People* v. *Valenciano* (1985) 165 Cal.App.3d 604, 605-606 [211 Cal.Rptr. 651].)

A similar result has been reached in Oregon where a state statute provides that the court warn a defendant pleading guilty of the immigration consequences he may suffer. (*Lyons* v. *Pearce* (1985) 298 Ore. 554, 561 [694 P.2d 969, 974].) The Oregon Supreme Court held that by signing a plea agreement form which contained on its face a written warning of immigration consequences, the defendant had received adequate warning within the

language of a statute providing that "The court shall inform the defendant" of such immigration consequences. (*Ibid.*)

Prior to sentencing defendant, the trial court here advised him in the language of section 1016.5. When the court asked if he understood the advisement defendant replied, "Yes, ma'm." In his declaration in support of the writ petition, defendant avers that despite his assent on the record his English comprehension is limited. He declares that at the time of his sentencing "I did not understand anything that was going on and I did not comprehend that my plea of guilty to the sentence as negotiated was sealing my fate for deportation purposes. During all of the proceedings, I watched my attorney, and when she nodded, I said yes."

Defendant is also arguing he was not adequately informed by his trial counsel about the consequences of a guilty plea. According to his declaration counsel told him that if he pleaded guilty he would serve eight months in county jail. In response to his question as to whether he would be deported if he pleaded guilty she told him he would not. Thus, defendant's claim is that the fact of which he was ignorant was the legal consequence of a guilty plea. He made the plea from ignorance of its implications because he did not receive adequate assistance of counsel and because he did not understand the court's section 1016.5 admonition to him.[2]

At the hearing on the petition for the writ the court questioned defendant about his English language training. Defendant conceded that he had attended two years of college in the Philippines. Defendant testified that he had not studied English in college but had studied it before coming to this country. The court also questioned defendant about his waiver of the attorney-client privilege given so that trial counsel could testify about her advice to defendant. In all this colloquy defendant had no apparent difficulty in understanding the questions directed to him by the judge.[3] Based upon its

---

[2]Subdivision (b) of the section provides that, in pleas entered after January 1, 1978, if the record does not show the advisement, "the defendant shall be presumed not to have received the required advisement."

We have found only one California case discussing the question of whether in pleas taken after January 1, 1978, absent a section 1016.5 warning (§ 1016.5, subd.(b)), a defendant can be said to have pleaded guilty without understanding the nature and consequences of the plea. (*People* v. *Tran* (1984) 152 Cal.App.3d 680 [199 Cal.Rptr. 539].) In *Tran*, the defendants entered what the court found to be a "slow plea." (*Id.*, at p. 683.) On appeal the defendants were challenging the trial court's failure to give them *Boykin-Tahl* advisements. (*Ibid.*) The appellate court noted that failure by the trial court to give a section 1016.5 admonishment would similiarly vitiate the plea. (*Id.*, p. 683, fn. 3.) Defendants did not assert section 1016.5, subdivision (b) error as grounds for withdrawing their plea, however, so the *Tran* court did not reach the issue.

[3]The colloquy between defendant and the court began with the court asking, "Mr. Soriano, first of all, where did you go to school, sir? [¶] MR. SORIANO: University of Philippines. [¶] THE COURT: How high did you go to school? [¶] MR. SORIANO: Second year of college. [¶]

own questioning of defendant the lower court may well have concluded defendant's English competence was quite adequate for him to have understood the section 1016.5 advisement.

We find petitioner failed to make a sufficient showing at the hearing on the petition to overcome his own statement, made at the time his plea was entered, that he understood the 1016.5 advisement. Defendant sought to prove his English comprehension was so poor that without an interpreter's assistance he was incapable of entering a guilty plea with "sufficient awareness of the relevant circumstances and likely consequences." (*Brady* v. *United States* (1970) 397 U.S. 742, 748 [25 L.Ed.2d 747, 756, 90 S.Ct. 1463].) However, having failed to establish that his English was so faulty that he could not understand the section 1016.5 advisement, defendant failed to meet the first requirement for the writ. He did not show that his language difficulty was a fact unknown to the court and a fact which would have prevented rendition of judgment. (See *People* v. *Shipman, supra,* 62 Cal.2d 226, 230; *People* v. *Trantow, supra,* 178 Cal.App.3d 842, 845 [mere fact of defendant's alienage would not prevent the rendition of judgment].)

■ As to defendant's second claim—that he was deprived of effective assistance of counsel in making his guilty plea—this claim is not an appropriate basis for relief by writ of *coram nobis.* (*People* v. *Howard* (1965) 62 Cal.2d 237, 238 [42 Cal.Rptr. 7, 397 P.2d 999]; *People* v. *Adamson* (1949) 34 Cal.2d 320, 327, 332-333 [210 P.2d 13]; *People* v. *Buggs* (1969) 272 Cal.App. 2d 285, 289 [77 Cal.Rptr. 450]; *People* v. *Sharp* (1958) 157 Cal.App.2d 205, 208 [320 P.2d 589].) The appropriate means of raising a claim of ineffective assistance of counsel is either by direct appeal or by petition for a writ of habeas corpus. (*People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) We address defendant's ineffective assistance claim in the subsequent portion of this opinion devoted to his petition for habeas corpus. Accordingly, we find the trial court did not err in denying defendant's petition for a writ of error *coram nobis.*

THE COURT: At P.C.P. Philippine University? [¶] MR. SORIANO: No, Philippine College. [¶] THE COURT: And when did you come to this country? [¶] MR. SORIANO: April twentieth, 1980. [¶] THE COURT: You must have studied English in the Philippine Highlands, is that correct? [¶] MR. SORIANO: No. [¶] THE COURT: But you did study English there to some extent? [¶] MR. SORIANO: Yes. [¶] THE COURT: You were originally represented by Ms. . . . who sits here, right? [¶] MR. SORIANO: Yes, Your Honor. [¶] THE COURT: Whatever you told her is privileged and she cannot tell anybody. That is, you have that privilege unless you give up that right. [¶] MR. SORIANO: Okay. [¶] THE COURT: Are you willing to give up that right and let her testify as to anything she may have told you or you may have told her? [¶] MR. SORIANO: Okay. [¶] THE COURT: You're willing to give up that right? [¶] MR. SORIANO: Yes, I am willing."

## II.

### Habeas Corpus

This habeas corpus petition presents the interesting, and apparently novel, question in California of whether counsel for a criminal defendant who is an immigrant renders ineffective assistance by failing to adequately research the immigration consequences of a guilty plea by defendant.

Defendant petitions this court for a writ of habeas corpus, asking that he be permitted to withdraw his guilty plea. He contends his counsel below rendered ineffective assistance in that she neglected to adequately inform him of the immigration consequences of his guilty plea. Further, her failure to research federal immigration law meant that she did not seek to negotiate a plea which would not have subjected him to deportation, and she failed to request from the sentencing judge a recommendation against deportation which would have prevented his deportation for this offense.

Defendant's declaration in support of his petition for a writ of *coram nobis* avers: "I spoke with my attorney on two separate occasions prior to sentencing. At the first interview the public defender asked if I were an immigrant or U.S. citizen. I told her I was an immigrant. She asked me when I arrived in the United States. I told her April 20, 1980. She then told me if I plead guilty, I would serve just eight months in county jail. If I plead not guilty, I could serve three to four years in State prison. She strongly advised that I plead guilty. I asked her if I would be deported if I plead guilty. She said that I would not. [¶] . . . The second time I met with the public defender was approximately one week before the sentencing. I wanted to be sure that I would serve only eight months in county jail and that I would not be deported. . . . I specifically asked her if the plea of guilty would prevent me from obtaining citizenship. She said that I could apply in three years without any problem after I had finished probation. I then asked her if she was sure that I would not be deported. She assured me that I would not be deported. Based on these assurances, I entered my plea of guilty . . . . Had I known that I was exposing myself to deportation by pleading guilty, I would never have entered such plea. I would first have sought a disposition which would not render me deportable . . . ."

■ Both our federal and state Constitutions give a criminal defendant the right to assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) The right to counsel entitles a defendant to effective counsel. (*Strickland* v. *Washington* (1984) 466 U.S. 668, 686 [80 L.Ed.2d 674, 104 S.Ct. 2052]; *People* v. *Pope, supra,* 23 Cal.3d 412, 423-424.) The standard against which counsel's effectiveness will be measured is that of "reasonably

competent' " attorney who acts as a *"diligent conscientious advocate."* (*United States* v. *DeCoster* (D.C.Cir 1973) 487 F.2d 1197, 1202 [487 F.2d 1197]; accord *People* v. *Pope, supra,* 23 Cal.3d at p. 423.)

Under this standard a defendant may "reasonably expect that before counsel undertakes to act at all he will make a rational and informed decision on strategy and tactics founded on adequate investigation and preparation." (*People* v. *Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839].) Strategic choices made after inadequate investigation (*In re Hall* (1981) 30 Cal.3d 408, 426 [179 Cal.Rptr. 223, 637 P.2d 690]) fall short of providing effective assistance if "reasonable professional judgment" would not support the limitation on investigation. (*Strickland* v. *Washington, supra,* 466 U.S. 668, 690-691 [80 L.Ed.2d 674, 695].)

In order for a defendant to demonstrate that ineffective assistance requires reversal of his conviction he must demonstrate first, that his counsel's performance was deficient, and second, that he was prejudiced by that deficiency. (*Strickland* v. *Washington, supra,* 466 U.S. 668, 687 [80 L.Ed.2d 674, 693]; *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583-584 [189 Cal.Rptr. 855, 659 P.2d 1144].)

■ There is conflicting evidence as to what counsel told defendant about deportation. Defendant's affidavit states that counsel told him on two separate occasions in response to his questions that he would not be deported. At the hearing on the writ petition counsel testified that she had never told defendant he would not be deported if he entered a guilty plea, and that she had warned him that deportation "could" result. She also testified that she had advised him "in a general sense, that is, the same language that is used in the admonition I used in court, that such a plea could have consequences on his immigration status, his naturalization, deportation and exclusion from admission." Conflicting with her account was testimony given at the hearing by a relative of defendant's who had been present during all of defendant's criminal proceedings. This witness testified that, prior to one court appearance, he overheard a hallway conversation between defendant and his counsel in which defendant asked about immigration. Counsel replied by saying that immigration was "no problem."

Unlike the common case of a defendant who contends his counsel was ineffective for failing to investigate witnesses or evidence relating to a possible defense, defendant here maintains his counsel failed to investigate the law of immigration. He argues that under federal law and case authority he would not have been subject to deportation had he not been sentenced, but instead the imposition of his sentence had been suspended, and had he not been confined for a year, but for a period one day short of a year. (8 U.S.C.

§ 1251(a)(4); *Veleź-Lozano* v. *Immigration and Naturalization Serv.* (D.C.Cir. 1972) 463 F.2d 1305, 1307 [463 F.2d 1305] [defendant whose sentence of three years was suspended and who was placed on probation was "confined" as used in § 1251(a)(4) because "essential element . . . is the imposition of sentence rather than the actual serving of sentence"]; accord *Wood* v. *Hoy* (9th Cir. 1959) 266 F.2d 825, 828; *Mariam* v. *United States* (D.C.App. 1978) 385 A.2d 776, 779 [where the court suspended imposition of sentence defendant was not sentenced to confinement within the meaning of § 1251(a)(4)].)

At the hearing on the petition for *coram nobis*, defendant's trial counsel testified. When asked if, at the time she negotiated defendant's plea, she had been aware that imposition of sentence suspended would relieve defendant of deportation she answered that she had not been aware of that aspect of the law. Nor was she aware that a sentence of one day less than a year in county jail would have had a similar impact on his deportation status. She was then asked, "Had you known such, would you have pressed for such a disposition much harder?" She replied, "I would have tried to negotiate the case differently." Trial counsel then explained, "the only offer I was able to get from the District Attorney at all that Judge Campilongo would accept, was a four year State Prison sentence suspended. There was no question of imposition of sentence suspended. I might have approached that disposition differently had I been aware, but imposition of sentence suspended was never made an option to me and the same thing is true of the year minus one day in the county jail." After counsel testified that the plea agreement was the most advantageous criminal disposition available, she was asked, "Did you consider whether that was the most advantageous immigration disposition?" She replied, "No, I did not."

Under federal law a convicted alien may still avoid deportation under 8 United States Code section 1251(a)(4) if at the time he is sentenced or within 30 days thereafter the sentencing court makes a recommendation against deportation. (8 U.S.C. § 1251(b)(2).) Defendant's trial counsel was not asked at the *coram nobis* hearing whether she was aware of this provision of the law. The record is silent as to whether or not she sought such a recommendation from the sentencing court.

What is uncontested is that counsel, knowing defendant was an alien, resident in this country less than five years at the time he committed the crime, did not make it her business to discover what impact his negotiated sentence would have on his deportability. We have received an amicus brief[4]

---

[4] Approximately a month before oral argument Public Defender Brown filed a letter with the court which we consider to be an amicus curiae brief under California Rules of Court, rule 14(b).

in this case from San Francisco Public Defender Jeff Brown pointing out that his "office regards a defendant's immigration status as an important factor to be considered in determining the appropriate plea bargain for one's client." Accordingly, the public defender's office imposes on its staff attorneys, under its "Minimum Standards of Representation," the duty to ascertain "what the impact of the case may have on [the client's] immigration status in this country."

The American Bar Association's Standards for Criminal Justice, standard 14-3.2, which discusses plea agreements, provides, in pertinent part, that "(b) To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the defendant of the alternatives available and of considerations deemed important by defense counsel or the defendant in reaching a decision." (3 ABA Standards for Criminal Justice, std. 14-3.2 (2d ed. 1980) p. 73.) The commentary to the standard notes the importance of advising a client of collateral consequences which may follow his conviction. "[W]here the defendant raises a specific question concerning collateral consequences (as where the defendant inquires about the possibility of deportation), counsel should fully advise the defendant of these consequences." (*Id.,* at p. 75.)

While counsel maintained that she did warn defendant that there might be immigration consequences to his guilty plea, when questioned she described the warning she gave as "the advisement that is given in the course of the guilty plea, that is the general advisement I gave him." Is such a formulaic warning from his own attorney an adequate effort to advise a criminal defendant of the possible consequences of his plea? We think not.

The commentary to the American Bar Association's Standards for Criminal Justice standard 14-3.2 notes that while "the court must inquire into the defendant's understanding of the possible consequences at the time the plea is received . . . , this is not a substitute for advice by counsel. The court's warning, coming as it does just before the plea is taken, may not afford time for mature reflection." (3 ABA Standards for Criminal Justice, std. 14-3.2, *supra,* at p. 74.) Similarly, section 1016.5, subdivision (b) itself provides that "[u]pon request, the court shall allow the defendant additional time to consider the appropriateness of the plea in light of the advisement as described in this section." Both commentary and statute are concerned with the self-evident proposition that a defendant's in-court responses to rights advisements should not be made "off the cuff." Instead, they should reflect informed decisions he has reached after meaningful consultation with his attorney.

Even assuming counsel's version of events is the correct one, her response to defendant's immigration questions was insufficient. By her own admission she merely warned defendant that his plea might have immigration consequences. Had she researched the matter she would have known that his guilty plea, absent a recommendation from the sentencing court against deportation, made him deportable. Defendant states in his declaration that he would not have entered the plea had he known he "was exposing [himself] to deportation."

Defendant received only a pro forma caution from his attorney about the deportation consequences of his guilty plea. Furthermore, whatever advice his counsel did give him was not founded on adequate investigation of federal immigration law. Because he was not adequately advised of the immigration consequences of his plea defendant has been prejudiced by the institution of deportation proceedings against him. We conclude that defendant was deprived of effective assistance of counsel in entering his guilty plea and should be allowed to withdraw that plea.

The order denying defendant's petition for a writ of error *coram nobis* is affirmed; however, his petition for a writ of habeas corpus is granted. Defendant's judgment of conviction is vacated and the case is remanded to the trial court to allow him to withdraw his guilty plea.

Smith, J., and Benson, J., concurred.