**STATE of Delaware**

v.

**Mark A. CHRISTIE, Defendant.**

**CR. A. No. IN–92–09–1546–R1.**

Superior Court of Delaware,
New Castle County.

Submitted May 23, 1994.*
Decided June 2, 1994.

* This is the date the Court received notice from defendant's counsel that he would not be submitting a reply memorandum.

Manuela DiNardo, Deputy Atty. Gen., Dept. of Justice, for the State of Del.

John S. Malik, Wilmington, for defendant Mark A. Christie.

## OPINION

HERLIHY, Judge.

Defendant Mark Christie [Christie] has moved for postconviction relief pursuant to Superior Court Criminal Rule 61. The basis of his claim for relief is that his counsel at the time of the entry of his guilty plea did not inform him of the risk of deportation as a consequence of the plea. Therefore, Christie contends he was denied effective assistance of counsel.

## FACTS

Christie is a Jamaican native who is legally in the United States as a temporary resident alien. He was indicted in August 1992 for possession with intent to deliver cocaine, possession of cocaine within 1,000 feet of a school (both felonies) and the misdemeanor of resisting arrest.

On September 30, 1992, Christie pled guilty to possession with intent to deliver cocaine. 16 *Del. C.* § 4751. Pursuant to Superior Court Criminal Rule 11(e)(3), this Court sentenced Christie to a two-year suspended jail sentence to which he, his counsel and the prosecutor had agreed under Superior Court Criminal Rule 11(e)(1)(C). On May 18, 1993, Christie was sentenced on a violation of probation.

On December 8, 1993, an immigration judge sent notice to Christie's out-of-state counsel of a deportation hearing on March 16, 1994. Those proceedings have been continued to allow time for briefing on the instant motion and this decision. The record on these proceedings supplied by Christie's new in-state counsel indicates attempts in April and May 1993 to start deportation proceedings but the record is incomplete concerning why those efforts did not come to fruition. Through Delaware counsel different from counsel who represented him during his plea and sentencing, Christie filed his current motion on February 10, 1994.

The record is undisputed that Christie's original counsel was aware that Christie was not a U.S. citizen and that there was a risk of deportation arising from a conviction on a drug offense but said nothing about that risk to Christie. His original counsel has stated he believed the risk of deportation arose upon a third drug conviction. Christie's alien status was not mentioned during the plea colloquy and, therefore, was unknown to the Court and nothing was said by the Court to him regarding the risk of deportation.

## CLAIMS

Christie contends he was denied effective assistance of counsel because his prior counsel failed to advise him of the risk of deportation. If he had been so informed, he now says, he would not have pled guilty but would have gone to trial on all charges. He does not contend he was innocent. The State counters by arguing that the risk of deportation is a collateral matter which imposes no burden on the Court or counsel to explain in

order to achieve an appropriately entered guilty plea. The issues raised are of first impression in Delaware.

## DISCUSSION

■ As noted, the record is undisputed that no one, including the Court, mentioned during the plea colloquy Christie's non-citizen status or any deportation risk. Superior Court Criminal Rule 11(e) lists various matters which a judge accepting a guilty plea must be sure a defendant understands when entering a guilty plea. The risk of deportation is not in the list. Further, this Court is not required *sua sponte* to advise a defendant of the risk of deportation. *Downs–Morgan v. United States,* 765 F.2d 1534, 1538 (11th Cir.1985); *United States v. Russell,* 686 F.2d 35, 39 (D.C.Cir.1982).[1]

The remaining issue is whether Christie received ineffective assistance of counsel when his counsel knew of the risk of deportation but did not apprise Christie of that risk.

■ The judge who accepts a guilty plea must be satisfied that the plea is knowingly, intelligently and voluntarily entered. *Brown v. State,* Del.Supr., 250 A.2d 503, 505 (1969); *State v. Insley,* 51 Del. 196, 141 A.2d 619 (1958); *Sullivan v. State,* Del.Supr., 636 A.2d 931, 937 (1994). A defendant making a claim of ineffective assistance of counsel must show (1) that the lawyer's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability, but for the lawyer's unprofessional errors, the result would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984); *Albury v. State,* Del.Supr., 551 A.2d 53, 58 (1988). These standards apply to guilty plea proceedings. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Christ-

ie is required to make specific allegations of ineffectiveness. *Younger v. State,* Del.Supr., 580 A.2d 552, 554 (1990). Clearly, the allegation here is quite specific.

The issue raised has significantly divided the state and federal courts which have confronted it. *See* 65 A.L.R. 4th 719 *Alien's Plea—Inadequate Counsel;* 90 A.L.R.Fed. 748 *Alien's Plea—Inadequate Counsel.*

Primarily, it has been state courts which have decided that counsel have been ineffective in their representation when they have failed to advise an alien of the risk of deportation. *People v. Pozo,* Colo.Supr., 746 P.2d 523 (1987) (defendant's lawyer unaware of defendant's alien status did not discuss deportation risk; alien status could be a material aspect of representation and discussion whether to advise taking guilty plea, *Id.* at 529); *Commonwealth v. Wellington,* 305 Pa.Super. 24, 451 A.2d 223 (1982) (trial counsel has duty to alien client to learn of alien status and advise of deportation risks, *Id.* 451 A.2d at 226); *People v. Soriano,* 194 Cal. App.3d 1470, 240 Cal.Rptr. 328 (1987) (counsel knew of risks, discussed risks with defendant but did not seek out plea which might have prevented deportation thereby providing ineffective representation, *Id.* 240 Cal. Rptr. at 336); *People v. Padilla,* 151 Ill. App.3d 297, 104 Ill.Dec. 522, 502 N.E.2d 1182 (1986) (ineffective assistance provided when counsel knew of defendant's alien status, knew of deportation risk for drug offense and did not advise defendant of risk, *Id.,* 104 Ill.Dec. at 526, 502 N.E.2d at 1186); *Edwards v. State,* Fla.App., 393 So.2d 597 (1981) *petition for rev. denied,* 402 So.2d 613 (1981) (failure of counsel to advise defendant of deportation risk amounts to ineffective assistance of counsel making plea not knowing and intelligent, *Id.* at 600).[2]

---

1. On its own, however, this Court will soon be amending its English and Spanish language guilty plea forms to add: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

2. The *Soriano* and *Pozo* courts found ineffective assistance of counsel in part because counsel had

not sought out a plea with a judicial recommendation against deportation (JRAD). *Soriano,* 240 Cal.Rptr. at 336; *Pozo,* 746 P.2d at 528–29. At one time, such a step could be undertaken. 8 U.S.C.A. § 1251(b):

> The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply ... (2) if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or

The federal courts and a number of state courts have held that it is not ineffective assistance of counsel to fail to advise alien defendants of deportation risks. *United States v. Sambro*, 454 F.2d 918 (D.C.Cir. 1971) (counsel's mistaken impression regarding the risk of deportation stated during the plea colloquy did not compel withdrawal of plea—ineffective assistance claim not raised, *Id.* at 922); *United States v. Russell*, 686 F.2d 35 (D.C.Cir.1982) (error for trial court not to consider various factors such as prejudice to defendant, protestations of innocence, etc. where Assistant U.S. Attorney offered potentially misleading comment regarding risk of deportation, but issue of ineffective assistance of counsel not discussed, *Id.* at 41); *United States v. Santelises*, 509 F.2d 703 (2nd Cir.1975) (not ineffective assistance of counsel to fail to inform defendant of deportation risks, *Id.* at 704); *United States v. Yearwood*, 863 F.2d 6 (4th Cir.1988) (failure of defense counsel to advise of deportation risk is not ineffective assistance, *Id.* at 8); *United States v. Gavilan*, 761 F.2d 226 (5th Cir.1985) (not ineffective assistance of counsel when Cuban refugee not informed of risk and lawyer did not know of risk, *Id.* at 228); *United States v. Campbell*, 778 F.2d 764 (11th Cir.1985) (not ineffective assistance of counsel where counsel unaware of deportation risk and had not advised defendant of risk, *Id.* at 768) [3].

The state court opinions on this issue sustain the federal courts' reasoning. *Tofoya v. State*, Alas.Supr., 500 P.2d 247 (1972), *cert. denied* 410 U.S. 945, 93 S.Ct. 1389, 35 L.Ed.2d 611 (1973) (not ineffective assistance of counsel to fail to advise defendant of risk and to fail to seek plea with JRAD since deportation a collateral circumstance, *Id.* at 250); *State v. Chung*, 210 N.J.Super. 427, 510 A.2d 72 (1986) (not ineffective assistance of counsel; counsel had advised deportation issue "sticky" and defendant wanted only to change plea, *Id.* 510 A.2d at 77, 80); *State v.*

*Malik*, 37 Wash.App. 414, 680 P.2d 770 (1984) (not ineffective assistance of counsel where counsel advised of risk but did nothing more since possibility of deportation is collateral, *Id.* 680 P.2d at 772); *Mott v. State*, Iowa Supr., 407 N.W.2d 581 (1987) (not ineffective assistance to fail to advise of risk as it is collateral, *Id.* at 583, specifically rejecting *Pozo*, 746 P.2d 523; *Edwards*, 393 So.2d 597; *Wellington*, 451 A.2d 223); *State v. Santos*, 136 Wis.2d 528, 401 N.W.2d 856 (1987) (not ineffective assistance to fail to advise of collateral consequence of deportation and failed to seek plea with recommendation of deportation, *Id.* 401 N.W.2d at 858).

There are several important factors separating this clear division of case law deciding whether failure to advise of the risk of deportation is or is not ineffective assistance of counsel. On the side of holding that failure to advise is ineffective is the draconian nature of deportation, "the equivalent of banishment", *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433 (1947); "a savage penalty", "a life sentence of exile", *Jordan v. DeGeorge*, 341 U.S. 223, 243, 71 S.Ct. 703, 714, 95 L.Ed. 886 (1951).

Under the *Strickland* tests, the failure to advise an alien defendant of the risk of deportation is viewed as not meeting an objective standard of reasonableness. Further, since the defendants in many of these same cases said they would have elected to go to trial if they had known of the risk, these same courts have viewed the choice of pleading guilty instead as meeting the second, prejudice, test.

Those courts, however, holding that the failure of defense counsel to inform their alien clients of the risk of deportation have virtually uniformly focused on the collateral nature of deportation. The direct consequences of a plea are covered in Federal Rule 11, after which this Court's Rule 11 (effective in January 1992) was patterned.

within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, ...

However, on November 29, 1990 the JRAD provision was repealed and is no longer an option. *See People v. Gabot*, 176 A.D.2d 894, 575 N.Y.S.2d 358 (1991). While there is no claim in this case of ineffective assistance for failure to seek JRAD, the failure of counsel in *Soriano* and *Pozo*, to seek it was a significant basis for determining ineffective assistance.

**3.** The *Campbell* court specifically chose not to follow *Edwards*, 393 So.2d 597.

Such consequences include the trial and appeal rights being waived, the potential maximum sentence, any mandatory minimum sentences, possible defenses being waived[4] and so forth.

One of the underpinnings for the concern about collateral consequences is that "[t]o hold otherwise would place the unreasonable burden on defense counsel to ascertain and advise of the collateral consequences of a guilty plea". *Yearwood,* 863 F.2d at 8.

This concern addresses the first *Strickland* test of whether counsel's performance fell below an objective reasonable standard. Necessarily, in this Court's analysis, that test is the starting point. As drastic as deportation is for an individual, this Court is convinced that to impose a *constitutional* standard on defense counsel to determine if their clients are aliens and adequately and correctly advise them of the risks of deportation is to take the first step on a long, slippery slope. That slope would result in unacceptable burdens on defense counsel to ferret out and adequately advise on a number of potential collateral consequences of a plea. Such a slope would spawn endless litigation over effective assistance of counsel claims.

A review of but a few collateral consequences of guilty pleas (or guilty verdicts for that matter) underscores the teflon nature of the slope:

1. A person who is declared an habitual motor vehicle offender under 21 *Del. C.* § 2802(1) has his or her driving privileges revoked for five years, 21 *Del. C.* § 2809(1). Revocation means total loss of driving privileges and the offender is not entitled to a hardship or work permit. 21 *Del. C.* § 2733(g). If a person is declared an habitual offender and is convicted for driving while so declared, the five-year revocation is extended for five additional years. 21 *Del. C.* § 2733(f). Such extension, however, is not part of the sentence but is an action by the Division of Motor Vehicles.

2. If a person is convicted of certain drug offenses, he or she has all driving privileges revoked for two or three years depending on the particular charge. 21 *Del. C.* § 4177H. In many cases involving the two-year revocation, the maximum possible *jail* sentence is one year[5] and other cases the maximum possible jail sentence is six months[6]. Under 21 *Del. C.* § 4177H, the act of revocation is by the Secretary of the Department of Public Safety.

3. A defendant who uses a commercial vehicle in connection with any drug felony involving manufacture, distribution or dispensing of controlled substances is disqualified for life from driving a commercial vehicle. 21 *Del. C.* § 2612(d).

4. A person who pleads guilty to assault in the third degree commits a crime of violence involving physical injury to another person. 11 *Del. C.* § 611. The offense is a misdemeanor. A person convicted of such a crime, however, is thereafter forever barred from possessing a deadly weapon. If that person does so possess a deadly weapon, he or she is then chargeable with a felony. 11 *Del. C.* § 1448(a)(1).[7]

5. Similarly, a person who is convicted of any drug offense, including a misdemeanor, who later possesses a deadly weapon is also chargeable with a felony. 11 *Del. C.* § 1448(a)(1)(3).

6. Three convictions for driving without a license subjects a person to being declared an habitual offender and driving privilege revocation of five years. 21 *Del. C.* §§ 2802(a) and 2809.

7. The Secretary of the Department of Public Safety is authorized to assign points for violations of the motor vehicle code. Such points can accumulate and lead, independent of violation(s) to suspension of driv-

---

4. This consequence is generally covered in the waiver of the right to testify and/or presented evidence or witnesses.

5. 16 *Del. C.* § 4753.

6. 16 *Del. C.* § 4754.

7. The definition of deadly weapon, 11 *Del. C.* § 222(5), has been refined to create a use test ("which is used, attempted to be used, to cause death or serious physical injury") which ameliorates to a degree the impact of this collateral consequence from the former definition of deadly weapon which had no use test.

ing privileges. 21 *Del. C.* § 2733. They also can effect insurability and insurance rates.

The above list is not meant to be exhaustive. Clearly, most, if not all, of the examples of collateral circumstances cited are not as drastic as deportation. However, to a person whose livelihood depends on a job for which he or she needs a vehicle to get to that job or that job is driving, loss of all driving privileges for five years or life can have a devastating effect. Should an attorney representing an individual charged with a motor vehicle offense be *constitutionally* required to determine the prior driving record to determine eligibility for habitual offender treatment? [8]

Should this Court allow the withdrawal of pleas under *Strickland's* first test because defense counsel did not advise their clients of these or other collateral circumstances? While it may be advisable for counsel to discuss these other collateral consequences with their clients, as long as guilty pleas play such an integral part of the criminal justice process, this Court finds that it is unreasonable to impose on defense counsel such a constitutional standard.

■ In sum, this Court finds that Christie's original counsel's failure to advise him of the risk of deportation does not rise to the level of a violation of *Strickland's* first test that counsel's representation fell below an objective standard of reasonableness.[9]

■ The Court finds also that Christie fails *Strickland's* second test of prejudice. Facially, he arguably meets it on the allegation that he would not have plead guilty but, instead, would have gone to trial. However, he does not say he is innocent or would have presented any defenses. The Court has viewed the entire plea colloquy with the court reporter and there was nothing hesitant about the guilty plea.

One of the factors relating to the existence of prejudice which can or should be considered is whether a defendant in Christie's position asserts his innocence. *Russell,* 686 F.2d at 39; *Sambro,* 454 F.2d at 922, *Chung,* 510 A.2d at 77. At this time, this Court need not decide whether, if a colorable claim of innocence were made, a defendant in Christie's position might be entitled to an evidentiary hearing on that issue. *See Downs–Morgan v. United States,* 765 F.2d 1534, 1541 (11th Cir.1985).

In *Russell,* 686 F.2d at 39, the Court of Appeals indicated several considerations for the district courts to consider in circumstances similar to these. In addition to the presence or absence of an assertion of innocence, the court mentioned possible prejudice to the prosecution's case. In this case, the State has not alleged any prejudice. Other than that the offense to which Christie pled guilty occurred on August 14, 1992 and his motion was filed a year and one-half later, there is no additional *indicia* of prosecution prejudice.

This Court has considered whether to require the State to proffer a showing of prejudice. However, in the absence of an assertion of innocence or other defense, it declines to do so. Another reason for not requiring a State proffer is the fundamental fact that deportation is a collateral consequence.

Accordingly, Christie has failed to meet *Strickland's* second test of prejudice. Therefore, having failed to meet either test of ineffective assistance of counsel under *Strickland,* Christie's motion must be denied.

### CONCLUSION

For the reasons stated herein, defendant Mark Christie's *motion for postconviction relief is* **DENIED.**

---

8. This is a separate question from the need to determine any prior record to determine the applicable sentence, as the penalty increases for subsequent defenses. But this is a direct consequence.

9. Saying this, however, this Court endorses the admonition in *Campbell,* that defense counsel be sensitive to the harshness of deportation and undertake steps to properly appraise clients of the risk or seek help from immigration law practitioners. *Campbell,* 778 F.2d at 769.