Filed 12/12/19

CERTIFIED FOR PUBLICATON

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E070926 |
| v. | (Super.Ct.No. RIF101988) |
| ROBERT LANDEROS VIVAR, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Bambi J. Moyer, Judge. Affirmed.

Munger, Tolles & Olson, Joseph D. Lee, William Larsen and Dane Shikman for Defendant and Appellant.

Gibson, Dunn & Crutcher, Kahn A. Scolnick, Daniel R. Adler and Jason S. Kim for Alyssa Bell, Reuven Cohen, Ingrid V. Early, Gilbert Garcetti, Meline Mkrtichian, Ronald J. Nessim, Gabriel Pardo, Jennifer Resnik and David J. Sutton as Amici Curiae on behalf of Defendant and Appellant.

1

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Melissa Mandel and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

Defendant and appellant, Robert Landeros Vivar, pled guilty to possession of materials with the intent to manufacture methamphetamine.  (Health & Saf. Code, former § 11383, subd. (c).)  Defendant was placed on probation for three years, and as a condition of probation was to serve one year in county jail.  He also received a referral to the Residential Substance Abuse Treatment (RSAT) program.  Shortly after his release, defendant was removed from the country as a consequence of his plea.  Over a decade later, defendant filed a motion to vacate his conviction pursuant to Penal Code section 1473.7.  The trial court denied defendant's motion.

On appeal, defendant argues the trial court erred in denying his motion to vacate his guilty plea because his trial counsel was ineffective in failing to investigate and advise defendant of the immigration consequences of his plea and for failing to defend or mitigate the judgment.  Defendant also argues that his plea must be vacated because it was legally invalid.  We affirm.

2

## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Defendant immigrated from Mexico in 1962 when he was six years old.  He lived in the United States for 41 years until his removal in 2003.  He does not speak Spanish natively.  He has two United States citizen children and six United States citizen grandchildren residing in California.  At the time of the relevant offense, defendant had lawful immigration status.

Defendant became addicted to amphetamines in the mid-1990's.  Defendant entered RSAT and successfully completed drug treatment in 1998 or 1999.  However, he began using amphetamines again in the fall of 2001.

During the evening of February 16, 2002, defendant entered a grocery store in Corona.  A loss prevention employee in the store saw defendant take 12 boxes of Sudafed and hide them in his jacket.  After defendant paid for other items and attempted to leave, the employee detained him until police arrived.  While detained, defendant told the employee that he was going to give the Sudafed to someone else, who was going to use the Sudafed to manufacture methamphetamine.  In exchange, this person was to give defendant methamphetamine.  Defendant repeated this story when questioned by the police.  The responding officer then arrested defendant.

The Riverside County District Attorney charged defendant by complaint with possession of materials with the intent to manufacture methamphetamine (Health & Saf.

---

[1]  The facts concerning defendant's underlying offense are taken from the police report and the declarations filed in support of and in opposition to defendant's motion to vacate.

Code, former § 11383, subd. (c)) and petty theft with a prior conviction (Pen. Code, § 666).[2]

After his charge, defendant was represented by Jennifer D. of the Riverside County Public Defender's Office. On March 6, 2002, defendant pled guilty to possession of materials with the intent to manufacture methamphetamine.

Before entering this plea, defendant signed a felony plea form. This form required defendant to initial 17 separate paragraphs acknowledging that he understood the potential consequences of his plea. This included a paragraph stating: "If I am not a citizen of the United States, I understand that this conviction may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Defendant also initialed a paragraph acknowledging: "I have had an adequate time to discuss with my attorney (1) my constitutional rights, (2) the consequences of any guilty plea, and (3) any defenses I may have to the charges against me." Jennifer D. also signed the form, stating that she believed defendant understood his rights and understood he was waiving those rights, that defendant had had enough time to consult with Jennifer D. before entering the plea, and that he understood the consequences of the plea.

The trial court accepted defendant's plea and incorporated the "Advisement of Rights form." As a result of the plea agreement, the People dismissed the second count against defendant. The trial court sentenced defendant to two years, but suspended

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

4

execution of this sentence and placed defendant on probation for three years. As a condition of probation, defendant was required to serve one year in county jail. He was also recommended to RSAT, and the parties stipulated that the suspended sentence would be executed if defendant failed to complete the program after being admitted to it.[3]

Defendant was returned to custody after his plea. "After a few days of waiting," defendant contacted the RSAT program to inquire about when he would be admitted. Defendant was informed that he could not be admitted to the RSAT program "due to an 'immigration hold.'" Defendant sent ex parte letters to the trial court on April 7, 2002, July 13, 2002, and October 28, 2002, expressing confusion about his sentence, requesting assistance to be admitted to the RSAT program, and making other legally improper requests to reduce his sentence and ameliorate its immigration consequences.

On May 16, 2002, the Immigration and Naturalization Service (INS) sent defendant a notice to appear indicating that he was subject to removal due to his conviction under former section 11383, subdivision (c) of the Health and Safety Code. Defendant was deported seven months later, in January 2003. Defendant re-entered the United States in May 2003.

On January 3, 2018, defendant filed a motion to vacate his conviction under section 1473.7. In support of this motion, defendant submitted a declaration on his own behalf. In that declaration, defendant noted that he only met with Jennifer D. twice, each time for less than 10 minutes. According to defendant, Jennifer D. "*never* asked about

---

[3] The transcript of the change of plea hearing was not provided to the trial court and is not included in the record on appeal.

5

[his] citizenship or immigration status, and . . . *never* explained any of the actual immigration consequences that would result from [his] conviction." Defendant said he affirmatively told Jennifer D. that he "was very worried about possible deportation," but that she "never discussed the immigration consequences of [his] plea options." (Underlining omitted.) Defendant admitted he was under the mistaken impression that he "could not be deported for a misdemeanor, and . . . assumed that all felonies resulted in deportation." This misunderstanding led him to reject a three-year prison sentence offer from the People; instead, he requested that Jennifer D. attempt to obtain a plea deal which included drug treatment and could be reduced to a misdemeanor. Defendant claimed that Jennifer D. never attempted to correct his mistaken understanding of the law. He accepted the ultimate plea deal because he wanted to participate in drug treatment and believed that if he completed RSAT he would be able to reduce his conviction to a misdemeanor and avoid immigration consequences. According to defendant, if he had known his plea would make him deportable he would not have entered it, and would have requested Jennifer D. seek an immigration-neutral plea even if it came with a harsher sentence.

Alongside this declaration, defendant also submitted correspondence between his current counsel and Jennifer D., as well as records from the Riverside County Public Defender's Office regarding defendant's case. These records included Jennifer D.'s

handwritten notes.[4]  In the correspondence between defendant's current counsel and Jennifer D., Jennifer D. claimed that all her "non-citizen clients were routinely advised that deportation was a possible consequence of a felony conviction, which is consistent with the language used in the approved *Tahl*[5] form . . . ."  Jennifer D. also stated that "in addition to the *Tahl* advisement, he was specifically cautioned that, in spite of his experience on the prior [Health and Safety Code section] 11377 case . . . an RSAT term of sentencing on his new case would NOT determine whether or not he would be deported on the new offense, and that if he had any questions about that, he should consult an immigration attorney for clarification."

Jennifer D.'s contemporaneous notes corroborate this, stating "[defendant] was fully advised of consequences of plea to [Health and Safety Code section] 11383[, subdivision] (c)."  These notes also reveal that "[defendant] declined alternative of

---

**4**  Jennifer D. apparently refused to provide a declaration to defendant's counsel. Nevertheless, the trial court considered these e-mails, stating, "with respect to [Jennifer D.'s] emails, even though they were not—no statements were presented in declaration form, they were not objected to," and concluding, "[s]o I'm considering them."  The trial court also considered and entered into the record the proffered case notes from Jennifer D. and obtained from the Riverside County Public Defender's Office without comment or objection.  No parties object to the consideration of this evidence here or at the trial court level; indeed, the People relied on Jennifer D.'s case notes both at oral argument below and in their brief here.  Nor does ignorance or inadvertence explain a failure to object, as defendant did successfully object to a declaration offered by the People.  We therefore consider this evidence on appeal.

**5**  The plea form is known as a *Tahl* form because it reflects the constitutional advisements mandated under *In re Tahl* (1969) 1 Cal.3d 122 (*Tahl*), disavowed on other grounds in *Mills v. Municipal Court* (1973) 10 Cal.3d 288 and *Boykin v. Alabama* (1969) 395 U.S. 238.

pleading to [Penal Code section] 459 w/ LT[6] state prison + parol [*sic*]. Wants help w/ drug problem; RSAT."

The People opposed defendant's motion. The court held a hearing on the motion. Prior to the on-the-record hearing, the court held a chambers conference with the attorneys and gave an oral tentative ruling. The court then heard argument from both parties. During defendant's argument, the court noted that there was some disagreement between defendant's declaration and Jennifer D.'s e-mails. Defendant's counsel stated that "if Your Honor has factual concerns about that . . . it might make sense to subpoena [Jennifer D.] to appear here and to testify about her recollection." However, defendant's counsel then stated: "[I]f Your Honor is able to credit her email, then I don't know it's necessary." Jennifer D. was not subpoenaed to appear.

After hearing argument the court denied defendant's motion. In coming to this conclusion, the court made the factual determination that Jennifer D. did advise defendant exactly as her e-mails claimed. The court also found the fact that the final sentence included only a recommendation for RSAT, rather than a referral, indicated that Jennifer D. was not certain defendant would even be admitted to RSAT.

Defendant timely appealed this denial.

### III.  DISCUSSION

Defendant argues his motion to vacate should have been granted because he was ineffectively assisted by his counsel, Jennifer D.  Specifically, defendant claims that

---

**6** We assume, as the trial court did, that this is referring to the "low term" for a violation of section 459, which criminalizes burglary.

8

Jennifer D.'s assistance did not meet either the Sixth Amendment standard for assistance of counsel nor the standard under section 1473.7 because she failed to advise defendant of the near certainty that defendant's guilty plea would result in his deportation and failed to defend against or mitigate the immigration consequences of his plea. Defendant also argues that even if his attorney's representation was not ineffective, he should be allowed to vacate his plea as legally invalid because it was premised on an impossible condition.

A. *Standard of Review*

Review of a motion to vacate a plea based on alleged ineffective assistance of counsel implicates a constitutional right and is therefore a mixed question of fact and law. (*People v. Olvera* (2018) 24 Cal.App.5th 1112, 1116.) Under these circumstances, "[w]e independently review the order denying the motion to vacate . . . ." (*Ibid.*) This standard requires that "[w]e accord deference to the trial court's factual determinations if supported by substantial evidence in the record, but exercise our independent judgment in deciding whether the facts demonstrate trial counsel's deficient performance and resulting prejudice to the defendant." (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76.)[7]

However, "[t]o the extent the motion [under section 1473.7] asserts statutory error or a deprivation of statutory rights, the denial is reviewed for an abuse of discretion." (*People v. Rodriguez* (2019) 38 Cal.App.5th 971, 977; see, also *People v. Patterson*

---

[7] Because we review the trial court's application of the law de novo, it is not necessary to decide whether the trial court improperly considered the harm to Jennifer D. that might result as a consequence of determining that she ineffectively assisted defendant. We do not consider such harm in our decision.

(2017) 2 Cal.5th 885, 894 ["A trial court's decision whether to permit a defendant to withdraw a guilty plea under section 1018 is reviewed for abuse of discretion."]; *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192 [noting that a decision to grant or deny a motion to vacate a conviction under section 1016.5 is reviewed under abuse of discretion]; *People v. Chien* (2008) 159 Cal.App.4th 1283, 1288; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1254 ["A decision to deny a motion to withdraw a guilty plea '"rests in the sound discretion of the court"' . . . ."].) As we discuss below, because defendant fails to establish that reversal is necessary under the less deferential mixed question of law and fact standard, it is unnecessary to review his claims under the abuse of discretion standard.

B. *Defendant Did Not Meet His Burden to Prove Ineffective Assistance of Counsel and Prejudicial Error Under Section 1473.7*

Section 1473.7, subdivision (a)(1) allows anyone not in criminal custody to file a motion to vacate a conviction if "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty . . . ." "Ineffective assistance of counsel . . . is the type of error that entitles the defendant to relief under section 1473.7." (*People v. Ogunmowo*, *supra*, 23 Cal.App.5th at p. 75.)

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." (*Lee*

10

*v. United States* (2017) 582 U.S. __, __ [137 S.Ct. 1958, 1964].) """In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating . . . that counsel's performance was deficient because it 'fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms.'""" (*People v. Salcido* (2008) 44 Cal.4th 93, 170.) Prevailing professional norms at the time of a plea can be determined in part by looking to "norms of practice as reflected in American Bar Association standards," and other contemporaneous sources demonstrating what the standard of practice was at the relevant time. (*Strickland v. Washington* (1984) 466 U.S. 668, 688.) """If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice. . . .""" (*People v. Salcido*, *supra*, at p. 170.)

The burden of proof the defendant must meet in order to establish his entitlement to relief under section 1473.7 is a preponderance of the evidence. (§ 1473.7, subd. (e)(1).)

1. Defendant's Trial Counsel Provided Ineffective Assistance

Defendant argues he has proven his counsel's representation was deficient under either the Sixth Amendment or section 1473.7 because the record indicates that his counsel did not affirmatively advise him that his plea would result in deportation and because his counsel did not attempt to negotiate an immigration-neutral plea.

Though relatively recent changes in the law have established that failure to advise about the immigration consequences of a plea can constitute ineffective assistance of

11

counsel, defendant's conviction predates this case law and is not entitled to its benefits. Namely, the 2010 United States Supreme Court decision in *Padilla* held that criminal defense attorneys have an affirmative duty under the Sixth Amendment to advise their clients of the potential deportation consequences of any plea. (*Padilla v. Kentucky* (2010) 559 U.S. 356, 374 ["[C]ounsel must inform her client whether his plea carries a risk of deportation."].) Prior to this decision, including at the time of defendant's plea, the "collateral consequences" doctrine stated that failure to advise a defendant about the immigration consequences of a plea did not necessarily constitute ineffective assistance of counsel under the Sixth Amendment. (*Chaidez v. United States* (2013) 568 U.S. 342, 350-352.) As the United States Supreme Court recognized, this meant that *Padilla* "answered a question about the Sixth Amendment['']s reach that we had left open, in a way that altered the law of most jurisdictions . . . ." (*Chaidez v. United States*, *supra*, at p. 352.) *Padilla* thus announced a "new rule," and therefore "defendants whose convictions became final prior to *Padilla* . . . cannot benefit from its holding." (*Chaidez v. United States*, *supra*, at p. 358.)

However, though this doctrine was in place federally, "the California Supreme Court disavowed the collateral-direct consequences distinction in 2001 (nine years before *Padilla*), and expressly reserved the question whether there was at that time an affirmative duty to advise . . . ." (*People v. Olvera*, *supra*, 24 Cal.App.5th at p. 1117.) Thus, even before *Padilla*, California recognized that immigration consequences were not collateral and that pleas could be challenged on the basis that counsel ineffectively

12

assisted their client in advising or failing to advise them about the immigration consequences of a plea under certain circumstances.

Nevertheless, prior to *Padilla*, it remained an open question in California whether defense counsel had an affirmative duty to advise about immigration consequences of a plea. Earlier cases provide limited guidance on what types of advice or lack thereof rose to the level of ineffective assistance under California law prior to *Padilla*. While it is clear that affirmative misadvice satisfies the performance prong of an ineffective assistance claim (*In re Resendiz* (2001) 25 Cal.4th 230, 253), it is less clear whether a failure to provide comprehensive advice might qualify.

For instance, in *People v. Soriano* (1987) 194 Cal.App.3d 1470, the court considered an ineffective assistance of counsel claim based on alleged misadvice from counsel regarding the immigration consequences of a plea. The defendant averred that he asked his trial counsel directly whether his plea would have immigration consequences multiple times, and each time his counsel informed him it would not. (*Id.* at p. 1479.) On the other hand, counsel "testified that she had never told defendant he would not be deported if he entered a guilty plea, and that she had warned him that deportation 'could' result. She also testified that she had advised him 'in a general sense, that is, the same language that is used in the admonition I used in court, that such a plea could have consequences on his immigration status, his naturalization, deportation and exclusion from admission.'" (*Ibid.*)

Despite the conflicting evidence over whether counsel misadvised the defendant, it was "uncontested . . . that counsel, knowing defendant was an alien . . . did not make it her business to discover what impact his negotiated sentence would have on his deportability." (*People v. Soriano*, *supra*, 194 Cal.App.3d at p. 1480.) The court held that "[e]ven assuming counsel's version of events is the correct one, her response to defendant's immigration questions was insufficient," because "she merely warned defendant that his plea might have immigration consequences," and that further research would have revealed that his sentence made him deportable. (*Id.* at p. 1482.) In deciding that counsel had such a duty, the court pointed to a contemporaneous American Bar Association standard, which stated that "'[where] the defendant raises a specific question concerning collateral consequences (as where the defendant inquires about the possibility of deportation), counsel should fully advise the defendant of these consequences.'" (*Id.* at p. 1481, citing 3 ABA Standards for Criminal Justice. std. 14–3.2 (2d ed. 1980) p. 75.) On this basis, the court found the defendant's counsel had ineffectively assisted him and granted his habeas corpus petition. (*People v. Soriano*, *supra*, at p. 1481.)

Other courts interpreting *Soriano* have proposed two possible readings of the duty apparently outlined therein. "Construed broadly, *Soriano* requires defense counsel to: (1) research the specific immigration consequences of the alien defendant's guilty plea, [and] (2) attempt to negotiate a plea which takes the defendant out of the deportable class

14

of convicts . . . ." (*People v. Barocio* (1989) 216 Cal.App.3d 99, 107.)[8] "On the other hand, *Soriano* can be limited to its facts, i.e., a situation where the defendant may have been misinformed of the deportation consequences of his plea and where he avers he would not have entered the plea if he had known he would be deported as a result of the plea." (*People v. Barocio*, *supra*, at p. 107.) This narrow reading suggests that *Soriano* only required an attorney to research and apprise their client of the immigration consequences of a plea if that client asked a "specific question" on the subject. (See, e.g., *People v. Olvera*, *supra*, 24 Cal.App.5th at p. 1117 [noting that *Soriano*'s decision was "based on an ABA standard that: '"[W]here the defendant raises a specific question concerning collateral consequences (as where the defendant inquires about the possibility of deportation), counsel should fully advise the defendant of these consequences."'"].)

However, given the factual similarities between *Soriano* and this case, we are persuaded that even under a narrow reading, defendant has demonstrated Jennifer D.'s performance fell below an objective standard of reasonableness under prevailing professional norms at the time of his conviction. Defendant avers that he discussed his concerns about immigration with Jennifer D., and particularly his legal misunderstanding that if he had been permitted to complete the RSAT program and reduce his conviction to a misdemeanor he could have avoided deportation. Jennifer D.'s e-mails corroborate that

---

[8] While the court in *Barocio* also states that a broad reading of *Soriano* requires counsel to "request a judicial [recommendation against deportation] if appropriate or at least inform the defendant of the availability of the motion" (*People v. Barocio*, *supra*, 216 Cal.App.3d at p. 107), such recommendations were eliminated in 1990, and so were not available to defendant. (See Immigration Act of 1990, Pub.L. No. 101-649 (Nov. 29, 1990) 104 Stat. 4978, 5050, § 505(a).)

15

this conversation occurred, as she claims she specifically attempted to correct this misconception by "caution[ing] that, in spite of his experience . . . an RSAT term of sentencing on his new case would NOT determine whether or not he would be deported . . . ." This demonstrates that defendant asked Jennifer D. a specific question about deportation, which at least triggered the narrow interpretation of the duty set out in *Soriano*.

Nevertheless, Jennifer D. only provided the same advisement as contained in the *Tahl* form, namely, that "this conviction *may* have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization . . . ." (Italics added.) This is nearly identical to the advisement given by counsel in *Soriano*, where defense counsel also advised the defendant using the same language as the admonitions used in court, "that such a plea *could* have consequences on his immigration status." (*People v. Soriano*, *supra*, 194 Cal.App.3d at p. 1479, italics added.) Just as in *Soriano*, counsel here "[b]y her own admission . . . merely warned defendant that his plea might have immigration consequences." (*Id.* at p. 1482.) Such a failure to further warn or otherwise advise defendant of the certain immigration consequences of his plea fit the standard laid out in *Soriano*.

Accordingly, defendant has demonstrated by a preponderance of the evidence that his trial counsel's representation was constitutionally deficient.[9]

---

[9] Defendant also argues that his counsel ineffectively assisted him by failing to seek out potential immigration-neutral plea deals. Because we find that Jennifer D.'s representation was deficient on another basis, we do not address that contention here.

16

2.  <u>Defense Counsel's Error Was Not Prejudicial</u>

Though we find that defendant does meet his burden to show ineffective assistance of counsel, even "'"[i]f a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice . . . ."'" (*People v. Salcido*, *supra*, 44 Cal.4th at p. 170.)  "To establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (*People v. Ogunmowo*, *supra*, 23 Cal.App.5th at p. 78.)  A defendant establishes prejudice where he shows that "'"it is 'reasonably probable' the defendant would not have pleaded guilty if properly advised."'" (*People v. Martinez* (2013) 57 Cal.4th 555, 562, quoting *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 210.)

"[T]he test for prejudice considers what the defendant would have done, not what the effect of that decision would have been . . . ." (*People v. Martinez*, *supra*, 57 Cal.4th at p. 564.)  Indeed, a court can find it reasonably probable a defendant would have rejected a plea even if his only other option was a slim chance of victory at trial.  (*Lee v. United States*, *supra*, 582 U.S. at p. ___ [137 S.Ct. at p. 1967] [finding prejudice where it was reasonably probable defendant "would have rejected any plea leading to

_____

However, we note that the record does contain evidence that Jennifer D. communicated a potential immigration-neutral plea deal to defendant, which he rejected.  Though defendant argues this demonstrates that Jennifer D. advised defendant to reject the offer, there is no corroborating evidence for this supposition and the trial court explicitly rejected it, stating that the note states defendant rejected it and "[n]ot that she advised him not to take [it], or didn't relay it . . . ."

17

deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial."].)

In order to satisfy his burden to prove prejudice, "the defendant must provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised. It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances." (*People v. Martinez*, *supra*, 57 Cal.4th at p. 565.) In determining whether a defendant meets this burden "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. [Rather, they] should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (*Lee v. United States*, *supra*, 582 U.S. at p. __ [137 S.Ct. at p. 1967].)

Defendant did not satisfy this burden here. The record contains sufficient evidence to conclude that defendant prioritized drug treatment over potential immigration-neutral pleas, and therefore it is not reasonably probable that he would have rejected the plea but for his counsel's failure to properly advise him. In particular, Jennifer D.'s notes state that defendant "declined [the] alternative of pleading to [section] 459 w/ LT state prison + parol [*sic*]," and immediately thereafter notes that he "[w]ants help w/ [his] drug problem." Defendant's own putative expert acknowledged that a plea to a violation of section 459 "would have been an excellent immigration-neutral disposition for [defendant]." In other words, defendant was offered and rejected a plea

18

agreement that would have completely avoided any immigration consequences. These actions demonstrate that immigration consequences were not defendant's primary consideration in accepting or rejecting any plea offer, and that further advice on this front was not reasonably probable to change his decisionmaking.

The trial court came to the same conclusion. In considering this evidence, the trial court stated that defendant's rejection of a plea to a violation of section 459 caused it to "draw the conclusion and finding that [defendant] was more willing to rely on his experiences than he was on his counsel's advice." This was a factual inference the trial court was entitled to draw, and under a mixed question of law and fact review "[w]e accord deference to the trial court's factual determinations if supported by substantial evidence in the record . . . ." (*People v. Ogunmowo*, *supra*, 23 Cal.App.5th at p. 76.) Accepting the trial court's factual finding that defendant was apparently unwilling to listen to the advice of counsel, it is not reasonably probable that further advice would have induced him to change his mind about his plea.

The only evidence defendant did not understand his plea and would not have taken the plea had he understood it is his own declaration and his letters to the court sent after accepting the plea. However, "a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted [or rejected] a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence." (*In re Alvernaz* (1992) 2 Cal.4th 924, 938.) Defendant points to no

19

contemporaneous evidence in the record that corroborates the claims in his declaration. Indeed, much of the contemporaneous evidence, as well as defendant's own testimony, indicate that no amount of additional advice would have caused him to act otherwise.

Defendant argues that recently published cases have interpreted section 1473.7 to require that defendant need only demonstrate that he misunderstood his plea, regardless of whether counsel's ineffective assistance created that misunderstanding, so long as counsel's error failed to correct it. Defendant points in particular to *People v. Camacho* (2019) 32 Cal.App.5th 998 and *People v. Mejia* (2019) 36 Cal.App.5th 859. Both *Camacho* and *Mejia* held that where a party moves to vacate their conviction under section 1473.7 "even if the motion is based upon errors by counsel, the moving party need not also establish a Sixth Amendment violation," and is "required only to show that one or more of the established errors were prejudicial and damaged his 'ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] plea . . . .'" (*People v. Camacho, supra, at pp.* 1008-1009.) According to these cases, a court should vacate a defendant's plea if "the defendant simply proves by a preponderance of the evidence a 'prejudicial error damaging the moving party's ability to *meaningfully understand*, defend against, or *knowingly accept* the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.'" (*People v. Mejia*, *supra*, 36 Cal.App.5th at p. 871.) "[A] 'prejudicial error' occurs under section 1473.7 when there is a *reasonable probability*

that the person would not have pleaded guilty . . . had the person known that the guilty plea would result in mandatory and dire immigration consequences." (*Ibid.*)

We agree with *Camacho* and *Mejia*'s conclusion that prevailing under section 1473.7 does not require a defendant to prove a violation of his constitutional rights, and only requires contemporaneous evidence demonstrating a reasonable probability that but for the alleged error defendant would not have entered a guilty plea. However, we disagree that these cases counsel a different result here.

To begin with, neither *Camacho* nor *Mejia* discuss the appropriate standard of review for a decision based solely on section 1473.7. As discussed above, where a constitutional right is implicated, as in a claim of ineffective assistance of counsel, the mixed question of law and fact standard is the appropriate standard of review. (*People v. Olvera, supra,* 24 Cal.App.5th at p. 1116.) However, where the decision is based solely on a statutory right, abuse of discretion is the standard. (*People v. Rodriguez, supra,* 38 Cal.App.5th at p. 977.) Thus, though a defendant may prevail on a motion under section 1473.7 without showing constitutionally deficient representation, the trial court's denial of such a motion would be accorded much greater deference than we are required to show in this case. Given this, *Camacho* and *Mejia*'s analysis is of limited utility here. Moreover, even under an expansive reading of *Camacho* and *Mejia* we still conclude that defendant failed to meet his burden to show that there is a reasonable probability that but for the error defendant would not have entered his plea. As discussed above, the trial court found that even assuming he subjectively misunderstood his plea, no amount of

21

additional advice was reasonably probable to induce a different action. The trial court's factual findings on these points must be accorded deference under any applicable standard.

Because defendant has not proven by a preponderance of the evidence that he was prejudiced by his counsel's alleged errors, he is not entitled to relief.

C. *The Trial Court Did Not Abuse Its Discretion in Declining to Find Defendant's Plea Legally Invalid*

Defendant also argues that his conviction is "legally invalid due to prejudicial error" under section 1473.7, subdivision (a)(1), because the plea contained conditions that were impossible for defendant to meet. Specifically, that the plea required him to complete the RSAT program, or else the stayed low term sentence would be executed. Defendant argues he could not meet this condition because his conviction initiated an immigration hold that made it impossible for him to be admitted to RSAT.

What constitutes legal invalidity under section 1473.7, subdivision (a)(1) is a question of statutory interpretation. "We review statutory interpretation issues de novo." (*People v. Morales* (2018) 25 Cal.App.5th 502, 509.)

To begin with, there is no evidence in the record before us that admission to or completion of RSAT was a condition of probation. Though the plea form states that the parties have a "[s]tipulation that defendant will receive LT (2 years) custody if he fails to complete RSAT after being admitted to the program," this stipulation is not reflected in the court's sentence. The court's sentencing minute order merely states that the "[c]ourt

22

recommends Residential Substance Abuse Treatment Program," and does not make completion a condition of probation. This is consistent with another section of the plea form which states that "[t]he custody term will be 365 days County jail with RSAT recommendation." (Bolding & underlining omitted.) In considering defendant's section 1473.7 motion, the trial court noted this discrepancy, and found it "peculiar that it would only be a recommendation rather than a referral to RSAT." The trial court concluded that this discrepancy corroborated the notion that defendant ignored Jennifer D.'s advice because he was hyperfocused on drug treatment above all else, as "it doesn't appear that [Jennifer D.] was at all sure he would even get RSAT, but because [defendant] had had RSAT before, he was sure he would get RSAT."

However, even if RSAT was a term of probation as recorded in the plea form, that condition was that defendant would receive a two-year sentence if he failed to complete RSAT "after being admitted to the program." Defendant was never admitted to the program because of the immigration hold—indeed, his ex parte communications to the court in the months following his sentence were attempts to get admitted to the program. Thus, even assuming the condition recorded in the plea form is the condition actually imposed, this condition was not impossible to perform. While it is true that the immigration hold made it impossible for defendant to complete RSAT, it also made it impossible for him to be admitted to RSAT, thereby rendering the condition moot.

However, even accepting that the condition was impossible, defendant does not prevail under section 1473.7. Defendant admits that at the time of briefing only one

23

published case, the previously discussed *People v. Camacho, supra,* 32 Cal.App.5th at pages 1008 and 1009, had considered the legal invalidity of a plea under section 1473.7 independent of an ineffective assistance of counsel claim.  Since then, at least two additional published cases have agreed with *Camacho*'s conclusion, including the previously discussed *Mejia* case.  (See *People v. Mejia*, *supra*, 36 Cal.App.5th 859; *People v. DeJesus* (2019) 37 Cal.App.5th 1124.)

As these cases make clear, under section 1473.7 legal invalidity is one of the bases for vacating a conviction.  Thus, a plea is legally invalid if it meets the standard necessary to vacate it, which standard we have already discussed at length—namely, that there was "a 'prejudicial error damaging the moving party's ability to *meaningfully understand*, defend against, or *knowingly accept* the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.'"  (*People v. Mejia*, *supra*, 36 Cal.App.5th at p. 871.)

In this case, the alleged impossible condition of defendant's probation, even if error, had no effect on defendant's understanding of the immigration consequences of his plea.  Even if we grant that imposing this condition tends to demonstrate that none of the involved parties fully understood the immigration consequences of the plea, the condition itself did not cause that confusion.  Therefore, the imposition of a putatively impossible condition of defendant's probation did not render his plea legally invalid under section 1473.7.

Perhaps recognizing this, defendant instead argues that "legal invalidity" under section 1473.7 should be analogous to other cases where a defendant was entitled to withdraw his or her plea because of an invalid condition of that plea. Defendant cites three cases: *People v. Morris* (1979) 97 Cal.App.3d 358, *People v. Vargas* (1990) 223 Cal.App.3d 1107, and *People v. Pinon* (1973) 35 Cal.App.3d 120. Each of these cases is distinguishable.

In both *Morris* and *Vargas*, the courts considered cases where the defendant pleaded to a lower sentence, only to have the court unilaterally impose a higher sentence. In *Morris*, the trial court imposed but stayed a sentence above and beyond that contemplated by his plea bargain as an incentive for the defendant to return for formal sentencing. (*People v. Morris*, *supra*, 97 Cal.App.3d at pp. 360-361.) In *Vargas*, the court imposed a higher sentence than the one contemplated when the defendant failed to appear for resentencing. (*People v. Vargas*, *supra*, 223 Cal.App.3d at pp. 1110-1111.) Both of these cases are therefore readily distinguishable, as they involve a court ignoring a negotiated plea bargain and imposing a sentence greater than what was agreed upon without permitting the defendant the opportunity to withdraw his plea. That is not the case here.

*Pinon* is equally distinguishable. In *Pinon*, the defendant had two pending cases. (*People v. Pinon*, *supra*, 35 Cal.App.3d at pp. 122-123.) The defendant accepted a plea bargain on the first pending case that placed him on probation. (*Ibid.*) The defendant then entered a separate plea bargain on the other case, causing probation in his first case

to be revoked.  (*Id.* at p. 123.)  The court in *Pinon* held that "the trial court, knowing that another charge was pending, should have advised appellant that the other charge, depending on its disposition, would be considered by it in deciding whether he would continue on probation."  (*Id.* at p. 125.)  "By failing to advise appellant that his probation would be subject to termination on the basis of a conviction of the other charge, the promised probation which induced the guilty plea turned out to be illusory . . . ."  (*Ibid.*)

Unlike in *Pinon*, the RSAT term in this case is not illusory.  As discussed above, it is not at all clear that defendant's immigration status made it impossible to satisfy the terms of his probation.  Nor did defendant fail to receive the benefits of his plea, which required only that he receive a recommendation for admission to RSAT and not a referral or an order for admission into the program.  Defendant thus received the benefit of the plea bargain when the court recommended his admission to RSAT.  That he was unable to take advantage of this recommendation, and that this recommendation was ultimately pointless, does not change that defendant received exactly what he bargained for.

Defendant's plea was thus not legally invalid under section 1473.7 simply because it was impossible for defendant to ultimately be admitted to and complete the RSAT program.

D.  *Remand is Not Necessary or Appropriate*

At oral argument, counsel for defendant argued that rather than affirm the trial court's ruling, this court should remand the case for an evidentiary hearing in which they

could obtain Jennifer D.'s appearance for questioning.  Defendant cited *People v. Patterson, supra,* 2 Cal.5th at page 889, for the proposition that remand is appropriate.

We find *Patterson* distinguishable.  In *Patterson* the Supreme Court considered the denial of a motion to withdraw a plea under section 1018.  (*Id.* at p. 889.)  It determined that remand was necessary because "the trial court did not rule on whether [the defendant] had credibly demonstrated that he would not have entered a guilty plea . . . had he known the plea's immigration consequences,"  because it had erroneously concluded that "even if [the defendant] was unaware of the actual immigration consequences of his guilty plea, he could not, as a matter of law, show good cause to withdraw that plea . . . ."  (*Id.* at p. 899.)  Remand was therefore necessary "so that the trial court may exercise its discretion to determine whether [the defendant] has shown good cause to withdraw his guilty plea."  (*Ibid.*)

Setting aside that the court in *Patterson* considered a different statute and different rule, we still do not find its reasoning applicable here.  Unlike in *Patterson*, the trial court in this case explicitly considered defendant's contentions with regards to his contemporaneous knowledge and acceptance of the terms of his plea, concluding that defendant "was more willing to rely on his experiences than he was on his counsel's advice," and prioritized drug treatment over immigration concerns.  The trial court thus properly considered the available evidence and exercised its discretion, making remand unnecessary.

Moreover, it is unclear what purpose such a hearing would serve. Because we find that Jennifer D.'s representation was constitutionally deficient, compelling her attendance and permitting questioning on the subject of her representation is unnecessary. Indeed, the only remaining issue is the prejudice analysis, which requires that defendant provide contemporaneous evidence that but for his counsel's error he would not have entered the plea. This contemporaneous evidence is already contained in the record, and defendant has already testified as to his state of mind at the time in the form of a declaration. It is unclear what, if any, other evidence would be relevant on remand.

Accordingly, we decline to remand this case for any further evidentiary hearings.

## IV. DISPOSITION

The order denying defendant's section 1473.7 motion to vacate is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:

McKINSTER
J.

CODRINGTON
J.

28