Filed 2/16/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN ROMERO RODRIGUEZ,<br><br>    Defendant and Appellant. | D076917<br><br><br>(Super. Ct. No. SCN228835) |

APPEAL from an order of the Superior Court of San Diego County, Harry M. Elias, Judge. Reversed and remanded with directions.

Shay Dinata-Hanson for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Adrian Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

In 2007, Juan Romero Rodriguez, a non-citizen, entered a plea agreement in San Diego County that avoided any adverse immigration consequences. After the plea was entered, but before sentencing, Rodriguez was arrested and jailed for another crime in Riverside County. As a result of that arrest, Rodriguez did not appear at the scheduled sentencing hearing.

He later agreed to be sentenced in absentia, and the court imposed a sentence subjecting Rodriguez to deportation.

Deportation proceedings were initiated after Rodriguez's release from custody and remain ongoing. In 2019, after amendments to Penal Code section 1473.7,[1] Rodriguez filed a motion under the law seeking to vacate his conviction on the grounds that he had not been sufficiently advised of the immigration consequences he faced. After an evidentiary hearing, the court denied the motion. Rodriguez challenges that decision, asserting the court erred by finding he meaningfully understood he would become deportable as a result of the plea. We conclude the evidence supported Rodriguez's motion. We thus reverse and remand with directions to the trial court to grant Rodriguez's motion to vacate the conviction.

FACTUAL AND PROCEDURAL BACKGROUND

In 1986, before his first birthday, Rodriguez was brought to the United States from Mexico by his parents. He became a lawful permanent resident in 2006. In 2007, Rodriguez was arrested several times, three in Riverside County and once in San Diego County. The sentence he received as a result of the San Diego arrest, which occurred in May 2007 at the San Clemente Border Patrol checkpoint, is the subject of this appeal. Around 7:00 a.m. the day of the arrest, Rodriguez was stopped by an agent at the checkpoint, who noticed an open container of alcohol in the truck Rodriguez was driving. When he was stopped, Rodriguez seemed confused and did not know where he was or where he was coming from.

The agent directed Rodriguez to a secondary inspection, where border patrol discovered the truck Rodriguez was driving had been reported stolen a few days earlier. Rodriguez told the agents the truck was known to be stolen,

---

1     Subsequent undesignated statutory references are to the Penal Code.

but "everybody drives it."  Rodriguez was arrested and the agents found a glass pipe and a small amount of marijuana in his pockets.  The border patrol agents released Rodriguez to the California Highway Patrol (CHP).  After agreeing to waive his *Miranda* rights, Rodriguez told the investigating CHP officer that he knew the truck was stolen, and that any key would start the ignition.  He took the truck to a party, then got lost on his way home.  Rodriguez said he planned to abandon the truck by his home.

Rodriguez was eventually charged with four criminal counts related to the incident:  (1) taking and driving a vehicle (Veh. Code, § 10851, subd. (a)); (2) withholding a stolen vehicle (§ 496, subd. (d)); (3) possession of narcotics paraphernalia (Health & Saf. Code, § 11364); and (4) possession of marijuana (Health & Saf. Code, § 11357, subd. (b)).  Prior to trial, Rodriguez's defense counsel, deputy public defender David Thompson, began negotiations with the district attorney for a plea agreement.  Thompson was aware of Rodriguez's immigration status and had experience dealing with the collateral immigration consequences of criminal convictions.  Thompson obtained an agreement in which Rodriguez would plead guilty to unlawfully taking and driving a vehicle (Veh. Code, § 10851, subd. (a)) and receive probation, with no more than 120 days in local custody.  The sentence avoided any negative immigration consequences.

Before the plea was entered, however, Thompson was transferred to a different office and Rodriguez's case was reassigned to a new deputy public defender, Ann Michelle Chhokar.  At a hearing on September 10, 2007, Rodriguez, represented by Chhokar, entered the guilty plea pursuant to the negotiated agreement.  The preprinted change of plea form signed by Rodriguez contained a provision, which he initialed, stating "I understand that if I am not a U.S. citizen, this plea of Guilty/No Contest may result in

my removal/deportation, exclusion from admission to the U.S. and denial of naturalization." On the form, the word "may" was crossed out and the word "will" was written in to say, "will result in my removal/deportation ...." In addition, Rodriguez initialed a provision stating he understood he could receive a maximum punishment of up to three years in state prison.[2]

The trial court referred the matter to the probation department for a sentencing report and set the sentencing hearing for October 9, 2007. Before that date, Rodriguez was taken into custody in Riverside County on other charges. As a result, Rodriguez failed to appear at the October 9, 2007 hearing. Before any additional proceedings in the San Diego case occurred, Rodriguez was convicted of second-degree burglary in the Riverside case and sentenced to 16 months in state prison.

On January 15, 2008, Chhokar sent a letter to Rodriguez in prison, stating, "I have spoken to your lawyer who represented you in Riverside County. I know your cases have been resolved there but you still need to take care of your case in San Diego County. You need to fil[l] out a 1381 demand form so that I may handle your case here where you plea to unlawfully taking and driving a vehicle. I can handle this matter without you being transported to San Diego if you want that. Please fill out a 1381 demand and

---

[2]    The back of the form also contained a preprinted list of aggravated felonies and stated that "any conviction of a non-citizen for an 'aggravated felony' as defined under 8 U.S.C. 1101(a)(43), will result in removal/deportation, exclusion, and denial of naturalization. [¶] 'Aggravated Felonies' include, ... [¶] . . . [¶] ... Theft (Any type or amount)*...[¶]...*Where the term imposed is at least one year, whether or not any or all of that term is stayed or suspended at the time of sentencing."

4

send it to me ...."[3]  Chhokar also asked Rodriguez to let her know if he wanted to appear in court for his sentencing and stated that "[y]ou will be sentenced to concurrent time what you are serving now.  Your sentence here will not increase your time in custody."

Rodriguez sent Chhokar a letter instructing her to handle the matter without transporting him to San Diego and enclosing the section 1381 form. On February 27, 2008, the court sentenced Rodriguez to 16 months in prison, elevating his conviction to an "aggravated" felony under the federal immigration laws and subjecting him to deportation.  Rodriguez, however, continued to believe he was sentenced according to his plea agreement.  On July 1, 2008, the U.S. Department of Homeland Security issued Rodriguez a Notice to Appear.  The notice stated Rodriguez had become removable because he had been "convicted of two crimes involving moral turpitude not

---

[3]      Section 1381 provides in relevant part:  "Whenever a defendant has been convicted, in any court of this state, of the commission of a felony or misdemeanor and has been sentenced to and has entered upon a term of imprisonment in a state prison ..., and at the time of the entry upon the term of imprisonment or commitment there is pending, in any court of this state, any other indictment, information, complaint, or any criminal proceeding wherein the defendant remains to be sentenced, the district attorney of the county in which the matters are pending shall bring the defendant to trial or for sentencing within 90 days after the person shall have delivered to said district attorney written notice of the place of his or her imprisonment or commitment and his or her desire to be brought to trial or for sentencing unless a continuance beyond the 90 days is requested or consented to by the person, in open court, and the request or consent entered upon the minutes of the court in which event the 90-day period shall commence to run anew from the date to which the consent or request continued the trial or sentencing.  In the event that the defendant is not brought to trial or for sentencing within the 90 days the court in which the charge or sentencing is pending shall, on motion or suggestion of the district attorney, or of the defendant ..., or on its own motion, dismiss the action...."

5

arising out of a single scheme of criminal misconduct," citing his conviction in this case and the Riverside burglary conviction.[4]

In 2019, Rodriguez retained counsel and filed a motion to vacate his San Diego County conviction under section 1473.7. Rodriguez argued Chhokar had provided ineffective assistance of counsel by: (1) failing to investigate and accurately advise him about all of the immigration consequences of his plea; (2) failing to negotiate an immigration neutral plea deal; and (3) going forward with the section 1381 demand to be sentenced in absentia to a 16-month prison term. Rodriguez further argued that even if Chhokar's representation did not rise to ineffective assistance, it nevertheless constituted prejudicial error that prevented Rodriguez from meaningfully understanding, defending against, or knowingly accepting the immigration consequences of his plea and sentence.

Rodriguez submitted a declaration in support of his motion, explaining his strong relationship to this country, lack of any relationship to Mexico, and stating that if he had understood that he faced deportation, he would have taken the case to trial or negotiated a sentence with increased incarceration to avoid that collateral consequence. Rodriguez also stated his defense counsel never informed him "that being sentenced in absentia to 16 months [in] prison would lead to deportation." The District Attorney opposed the motion, asserting it was untimely, that Rodriguez had been properly advised of the potential immigration consequences of the plea agreement, as evidenced by the plea change form, and that Rodriguez, therefore, could not show ineffective assistance of counsel on this basis.

---

[4] The actual basis for removal, however, appears to be the San Diego conviction for theft with a sentence of more than one year in prison.

The trial court conducted an evidentiary hearing on the motion, taking testimony from Rodriguez, Thompson, and Chhokar. Rodriguez recalled he was represented by two different attorneys, and that Thompson told him he would try to get him a deal that would not affect his immigration status. Rodriguez testified he did not understand that the plea agreement contained a disclosure provision indicating he could be sentenced to up to three years in prison, which could subject him to deportation. Rodriguez was not aware he had received a sentence other than what was contained in the plea agreement until "way after" he was released from prison. Rodriguez repeated the assertion he made in his supporting declaration that if he had understood the immigration consequences, he would not have accepted the sentence.

Thompson testified that he had practiced as an immigration attorney before working as a public defender and was aware of Rodriguez's immigration status. Thompson's goal was to negotiate a plea agreement that would avoid the risk of deportation. He also stated that he had reviewed his files from the case, which contained notes about Rodriguez's immigration status that were provided to Chhokar.

Chhokar could not recall Rodriguez's case. Before the hearing, she reviewed the public defender's file and the guilty plea paperwork containing her signature. She testified the plea deal for probation and 120 days in local custody was negotiated by Thompson. Chhokar stated it was her custom and practice to review the change of plea form with the defendant, and to address any questions or concerns before they signed. Chhokar also testified that her notes indicated that prior to the plea entry, she was aware Rodriguez had a case in Riverside in which he was sentenced to 36 weekends. After entry of the guilty plea, and prior to sentencing, her notes showed she was also aware

7

that Rodriguez had a second case in Riverside for which he was serving 16 months in prison.

After argument, the court denied the motion. It concluded that Rodriguez was informed of and aware of the immigration consequences of his plea agreement and that his counsel did everything they could to obtain an immigration neutral plea agreement. The court noted the unusual sequence of events and encouraged Rodriguez to appeal its decision. The court framed the issue as whether counsel, "knowing when [Rodriguez] finally came up for sentencing that a state prison [term] would have a negative immigration consequence, [should] have ... gone forward on a 1381 demand to be sentenced in absentia ...."

DISCUSSION

I

In *Padilla v. Kentucky* (2010) 559 U.S. 356, the United States Supreme Court made clear that defense counsel are under a constitutional obligation to understand and accurately advise defendants about the immigration consequences of a guilty plea. (*Id*. at p. 374.) This obligation had long been the law in California. (See § 1016.2, subd. (a) ["California courts also have held that defense counsel must investigate and advise regarding the immigration consequences of the available dispositions, and should, when consistent with the goals of and informed consent of the defendant, and as consistent with professional standards, defend against adverse immigration consequences (*People v. Soriano* [(1987)] 194 Cal.App.3d 1470 ..., *People v. Barocio* [(1989)] 216 Cal.App.3d 99 ..., *People v. Bautista* [(2004)] 115 Cal.App.4th 229...."].) In 2016, the California Legislature codified the rule in section 1016.2. Recognizing that deportation "may be by far the most serious penalty flowing from the conviction," the statute requires "defense counsel to

8

provide affirmative and competent advice to noncitizen defendants regarding the potential immigration consequences of their criminal cases." (§ 1016.2, subds. (c), (a).)

In 2017, the legislature enacted section 1473.7, creating a mechanism to allow individuals who are no longer imprisoned to move to vacate a conviction or sentence on the ground that "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere."[5] (§ 1473.7, subd. (a)(1).) In 2019, the statute was amended to eliminate a requirement imposed by decisional law that the defendant also prove ineffective assistance of counsel as defined by *Strickland v. Washington* (1984) 466 U.S. 668, 688, 694. (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1066; see also *People v. Camacho* (2019) 32 Cal.App.5th 998, 1005 (*Camacho*), reh'g denied (Mar. 25, 2019), review denied (June 12, 2019) ["In the two years that followed the enactment of section 1473.7, California courts uniformly assumed ... that moving parties who claim prejudicial error was caused by having received erroneous or inadequate information from counsel, must demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing norms, as well as a reasonable probability of a different outcome if counsel had rendered effective assistance."].) The modified statute states that "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (*Ibid*.)

---

5    The statute contains two additional basis to vacate a conviction. A defendant can obtain relief if there is "[n]ewly discovered evidence of actual innocence" or if "[a] conviction or sentence was sought, obtained, or imposed on the basis of race, ethnicity, or national origin in violation of subdivision (a) of Section 745." (§ 1473.7, subd. (a)(2), (3).)

9

Under section 1473.7, the trial court must "grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)." (§ 1473.1, subd. (e)(1).) A defendant requesting relief under section 1473.7 bears the burden of establishing by a preponderance of evidence that there is a reasonable probability that he or she would not have entered into the plea agreement if he or she had meaningfully understood the associated adverse immigration consequences. (*Camacho, supra*, 32 Cal.App.5th at pp. 1011–1012; *People v. Mejia* (2019) 36 Cal.App.5th 859, 866 ["[t]he key to the statute is the mindset of the defendant ... at the time the plea was taken"]; *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133–1134 [Error defined as conduct "that damaged [the defendant's] ability to meaningfully defend against the actual or potential adverse immigration consequences of his plea."].) "A fact is proved by a preponderance of the evidence if ... it is more likely than not that the fact is true." (*People v. Gonzales* (2017) 16 Cal.App.5th 494, 500.)

The parties agree the independent review standard applies to this court's decision. Under this standard, "[w]e accord deference to the trial court's factual determinations if supported by substantial evidence in the record, but exercise our independent judgment in deciding whether the facts demonstrate trial counsel's deficient performance and resulting prejudice to the defendant." (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76; see also *People v. Vivar* (2019) 43 Cal.App.5th 216, 224, review granted on other grounds (Mar. 25, 2020, S260270).)

## II

The trial court concluded that Rodriguez had sufficient knowledge of the potential for deportation because the change of plea form entered on

10

September 10, 2007 contained a provision, which Rodriguez initialed, that stated, "I understand that if I am not a U.S. citizen, this plea of Guilty/No Contest *will* result in my removal/deportation, exclusion from admission to the U.S. and denial of naturalization." (Emphasis added.) The court also relied on the fact that Chhokar stated it was her practice to review the plea form with her client. The critical question in this case is whether this information supported the trial court's finding that Rodriguez "meaningfully understood the associated adverse immigration consequences" he ultimately faced at sentencing. We hold it does not.

As an initial matter, although not conclusive, Chhokar did not have any independent recollection of her review of the change of plea form with Rodriguez that would establish that it actually occurred. Rodriguez also did not recall such a conversation. Even assuming that Chhokar did provide this information, however, other testimony established the initialed provision relied on by the trial court to show Rodriguez understood he could be deported was inaccurate. As both parties now agree, Rodriguez's change in plea *did not* subject him to deportation at the time it was entered. The evidence substantiated this fact. Specifically, Thompson testified that his goal before his reassignment had been to negotiate a plea agreement that avoided any adverse immigration consequence. Rodriguez testified that Thompson had communicated this information to him and that Chhokar had said nothing to him about the immigration consequences of his case. Rodriguez testified he did not believe that he would be deported as a result of his conviction and sentence in the case. No evidence contradicted these facts.

Chhokar's testimony that it would have been her practice to review the provision in the plea form addressing deportation with Rodriguez was undercut by the fact that the sentence at issue at that time would not have

11

an adverse immigration consequence. Contrary to the trial court's finding, neither Chhokar's testimony nor the plea form established that Rodriguez was aware of the risk of deportation, either when he entered the plea or at any time before he was sentenced. The evidence before the trial court established only that at the time Rodriguez entered the plea, he reasonably believed the conviction would not threaten his immigration status.

With respect to Rodriguez's knowledge after he entered his guilty plea, neither Rodriguez nor Chhokar recalled any communication outside the January 15, 2008 letter and Rodriguez's written response. The Attorney General does not argue that the immigration consequences were clearly communicated to Rodriguez in Chhokar's letter. Instead, the Attorney General argues that Rodriguez should have inferred from this communication that he was being sentenced to more than one year in prison and that adverse immigration consequences would follow.

The only information contained in the letter about Rodriguez's sentence, however, was that he would "be sentenced to concurrent time what you are serving now" and "[y]our sentence [in San Diego] will not increase your time in custody." These statements were not a clear explanation of the change to Rodriguez's sentence resulting from his Riverside conviction. Nor did it convey to Rodriguez that the sentence for which he agreed to plead guilty was no longer available and that he would be subject to deportation.

In sum, no evidence before the trial court established Rodriguez was aware of the change in sentence until well after he was sentenced. This lack of awareness constituted a prejudicial error that damaged Rodriguez's "ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of" his guilty plea. (§ 1473.7, subd. (a)(1); see *Camacho, supra,* 32 Cal.App.5th at p. 1009

12

[defendant's and his counsel's misunderstanding of the immigration consequences of a plea, which defendant did not learn until "after his conviction was expunged and reduced to a misdemeanor," were errors supporting relief under section 1473.7].)

The People argue that the error is not cognizable under section 1473.7 because the sentence was not *a result of Rodriguez's guilty plea*, which they concede was "immigration-safe." Rather, they argue that Rodriguez became removable because he "agreed to being sentenced in the San Diego County case to at least a year of imprisonment after he was convicted of and sentenced for additional crimes in Riverside County." As discussed, this assertion is not supported by the record before this court. Rodriguez believed he would be sentenced in accordance with the guilty plea he entered on September 10, 2007. Contrary to the People's assertion, he was never told differently.

The Attorney General's brief responds to this problem by arguing that Chhokar's letter, stating that the sentence " 'was going to run concurrent' " with the 16-month sentence imposed in Riverside, alerted Rodriguez to the prison term because (1) of his recent exposure to the criminal justice system; (2) "one of [his] prior convictions was the same Riverside County burglary case for which the San Diego County case was ordered to run concurrent" with; and (3) if Rodriguez truly did not understand, he should not have agreed to go forward with sentencing. These assertions, however, do not show Rodriguez understood the consequences of his plea agreement and the subsequent change to his sentence. Prior involvement in the criminal justice system does not establish Rodriguez's knowledge of the immigration consequences he faced, nor does the existence of another conviction. The Attorney General's assertion that Rodriguez would not have agreed to go

13

forward with sentencing in absentia if he did not understand the letter is illogical. Rodriguez's testimony shows he agreed because he was under the mistaken belief that he would be sentenced in accordance with the plea. Given this reasonable belief, Rodriguez had no reason to question Chhokar.

Finally, the Attorney General's assertion that section 1473.7 does not apply because the sentence was not the result of Rodriguez's guilty plea, but rather the intervening Riverside conviction, is too narrow an interpretation of the statute. The two events were linked, and Rodriguez's sentence was necessarily a result of his earlier plea agreement.[6] Had Chhokar explained the modified sentence Rodriguez faced and its attendant immigration consequence before the sentence was imposed, Rodriguez could have made an informed decision to revoke the plea. Chhokar's obligation to inform her client of the immigration consequences of his plea did not end once the plea was entered. (See, e.g. *People v. Scott* (1994) 9 Cal.4th 331, 351 ["Under existing law, a defense attorney who fails to adequately understand the available sentencing alternatives, promote their proper application, or pursue the most advantageous disposition for his client may be found incompetent."].)

---

[6] Rodriguez raises an important point, not within this court's purview, but that merits mentioning. The record does not explain on what basis the sentencing court was authorized to impose a harsher sentence than the one set forth in the change of plea form. The form did not contain a waiver of Rodriguez's right to withdraw the plea. (See *People v. Cruz* (1988) 44 Cal.3d 1247, see also *People v. Vargas* (1990) 223 Cal.App.3d 1107 [as a part of the plea agreement, defendant agrees that should he fail to appear at sentencing, a greater term can be imposed by the sentencing court]; § 1192.5 [defendant "cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea"].)

14

The People present no argument concerning the prejudicial effect of Rodriguez's mistaken belief concerning his sentence and the evidence before the trial court amply established its prejudice.  (See *People v. Martinez* (2013) 57 Cal.4th 555, 563 ["That a defendant might reject a plea bargain because it would result in deportation, exclusion from admission to the United States, or denial of naturalization is beyond dispute."].)  Thus, we conclude Rodriguez is entitled to relief under section 1473.7.

DISPOSITION

The order is reversed, and the case is remanded with directions to the trial court to grant Rodriguez's motion to vacate the conviction.

McCONNELL, P. J.

WE CONCUR:


BENKE, J.


O'ROURKE, J.