Filed 11/3/23  P. v. Hernandez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICARDO RAFAEL HERNANDEZ,<br><br>    Defendant and Appellant. | B324965<br>(Los Angeles County<br> Super. Ct. No. PA049400) |

APPEAL from an order of the Superior Court of Los Angeles County, David Walgren, Judge.  Affirmed.

Edgar J. Cervantes for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Blake Armstrong, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Ricardo Rafael Hernandez (Hernandez) pled no contest to willful infliction of corporal injury on a spouse or cohabitant. Years later, he consulted with an immigration attorney to become a United States citizen. He was informed that he would be unable to obtain citizenship due to his conviction. Hernandez then moved to vacate his conviction (Pen. Code, § 1473.7),[1] claiming he failed to meaningfully understand or defend against the adverse immigration consequences of his conviction. The trial court denied the motion. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Charge*

On September 20, 2004, the Los Angeles County District Attorney's Office (People) filed a felony complaint charging Hernandez with one count of corporal injury to spouse/cohabitant/child's parent (Pen. Code, § 273.5, subd. (a)). Hernandez was not a United States citizen at the time of the charge.

### B. *The Plea and Conviction*

At his plea hearing on September 30, 2004, Hernandez pled no contest to the sole charge against him. Justine Esack (Esack), a Los Angeles County Deputy Public Defender, represented Hernandez at the hearing.

Before entering his plea, Hernandez signed a felony advisement of rights, waiver, and plea form (*Tahl* waiver). (*In re Tahl* (1969) 1 Cal.3d 122.)

The *Tahl* waiver stated the proposed disposition was a sentence of probation, under court-imposed terms. The proposed term included serving up to 365 days in county jail. The *Tahl* waiver also included Hernandez's

---

[1] All unspecified statutory references are to the Penal Code.

acknowledgment that Esack informed him "if [he] ple[]d . . . no contest to the above-listed charge(s)," the proposed disposition would be available. Hernandez initialed that section.

Hernandez also initialed the "Immigration Consequences" section of the *Tahl* waiver. The section provided, "I understand that if I am not a citizen of the United States, I must expect my plea of guilty or no contest will result in my deportation, exclusion from admission or reentry to the United States, and denial of naturalization and amnesty."

Hernandez also initialed the paragraph that stated, "Prior to entering this plea, I have had a full opportunity to discuss with my attorney . . . the consequences of my plea." The form continued, "I have no further questions of the Court or of counsel with regard to my plea(s) and admission(s) in this case."

Hernandez also signed under a paragraph that stated, "I have read and initialed each of the paragraphs above and discussed them with my attorney. My initials mean that I have read, understand and agree with what is stated in the paragraph."

Esack signed the "Attorney Statement" of the waiver, acknowledging, "I have reviewed this form with [Hernandez]. I have explained each of [Hernandez's] rights to [him] and answered all of his . . . questions with regard to those rights and this plea . . . and the consequences of the plea." Esack and Hernandez both signed the *Tahl* waiver on the day of the plea hearing.

At the hearing, the court questioned Hernandez about the signed and initialed waiver. The court showed Hernandez the four-page form and Hernandez confirmed he had read, signed, and initialed the waiver after discussing it with his attorney.

3

The court advised Hernandez of the immigration consequences of his plea. The court explained, "If you are not a citizen of the United States, this conviction may result in you being deported, excluded from admission, or denied naturalization pursuant to the laws of the United States." The court asked Hernandez if he understood the advisement and Hernandez replied that he did.

The court asked Hernandez if he had enough time to talk with Esack about the case, his constitutional rights, and any defenses. Hernandez again replied "yes." The court asked Hernandez whether he had any questions for Esack. Hernandez replied he did not.

The court accepted Hernandez's no contest plea. The court signed the *Tahl* waiver, finding "the defendant's plea(s) and admission(s) are freely and voluntarily made with an understanding of the . . . consequences thereof."

On November 1, 2004, the court held a hearing and suspended imposition of Hernandez's sentence. The court placed Hernandez on three years' formal probation, including 180 days in local custody.

C. *The Motion to Vacate and Opposition*

On May 18, 2022, Hernandez filed a motion to vacate his plea under section 1473.7, subdivision (a)(1). He stated in his supporting declaration that he had recently met with an immigration attorney about becoming a United States citizen. The immigration attorney advised him that his conviction could impact his ability to get citizenship. He subsequently hired Rebecca Martin (Martin) as counsel to file the motion to vacate and represent him in the motion proceedings.

Hernandez sought to vacate his conviction on the ground that he was unable to "meaningfully understand or defend against the immigration

4

consequences of his plea." He contended Esack told him, "if I pled, the case would be resolved." Hernandez also stated he decided to plead no contest, based on Esack's erroneous advice and his own misunderstanding of the law.

The People opposed the motion on the grounds that Hernandez did not establish by a preponderance of the evidence that he misunderstood the immigration consequences, or that Esack failed to properly advise him of the consequences.

D. *The Motion to Vacate Hearing*

On October 13, 2022, the court held a hearing on the motion. Martin represented Hernandez at the hearing. Hernandez was the only witness who testified. Hernandez testified that the "public defender" who represented him at the plea hearing reviewed the terms of the plea offer and the *Tahl* waiver with him. Hernandez said he understood everything the attorney explained. Hernandez acknowledged again that the signature and initials appearing on the *Tahl* waiver were his.

Hernandez recalled that at the time he pled, "the public defender" spent "no more than three to five minutes" explaining the terms of the offer to him. He also testified his attorney spent the same amount of time going over the *Tahl* waiver.

Contrary to his testimony at the plea hearing, he stated that he did not read the entire *Tahl* waiver before signing it. During cross-examination, the People read Hernandez's testimony from the plea hearing wherein Hernandez told the court he had read the waiver.[2] The People asked

---

[2] The court took judicial notice of the transcript from the 2004 plea hearing and the *Tahl* waiver.

5

Hernandez whether he lied to the court during the plea hearing. Hernandez replied, "I don't want to say I'm lying, but you know, I suppose, you know, I did."

When asked what the "the public defender" explained to him about immigration, Hernandez testified, "He just mentioned something about, you know, my status. That was it." When asked if his attorney ever explained that Hernandez would be deported, Hernandez replied, "not necessarily." When asked what the attorney explained about deportation, Hernandez stated "He mentioned something if I was legal, then I should be okay." Hernandez later testified on redirect that when he spoke to his attorney on the date of the plea, they did not speak about immigration.

Throughout direct examination, Hernandez referred to Esack using male pronouns and recalled the attorney who represented him in 2004 "was a male." The People asked the court to take judicial notice of the fact that Esack is a female. The court took judicial notice of that fact. During cross-examination, the People pointed out Esack's name on the *Tahl* waiver and the transcript of the plea hearing. Hernandez responded, "I agree signing, but like I said before, I thought it was a male."

Hernandez testified that at the time of the plea his main concern was to get out of custody as soon as possible, explaining, "it was more of me worrying about my kids and trying to get out to them. . . . I don't know what they would have done without me that long if I would have got the max sentence." He said, "[the plea deal] was going to be a chance for me to be out. . . . I was more concerned about my kids and trying to get to them."

The People asked Hernandez whether he had been deported because of the conviction he was seeking to vacate. Hernandez testified he was deported three times because of the conviction. Hernandez appeared at probation

violation hearings after he was deported on two different occasions, one in 2008 and one in 2009. Yet Hernandez testified that the first time he told anyone that he misunderstood the immigration consequences of his conviction was in 2022, 18 years after his plea.

### E. *The Trial Court's Ruling*

After hearing Hernandez's testimony and oral argument from both parties, the court denied Hernandez's motion. The court noted the law required it to review the contemporaneous evidence from the time of the conviction to corroborate Hernandez's self-serving statements. The court found the contemporaneous evidence did not corroborate Hernandez's assertions. The *Tahl* waiver and the plea hearing court's oral advisement "unequivocally show[ed]" Hernandez "knew full well what the consequences were." The court found Hernandez had agreed he signed, initialed, understood, and discussed the *Tahl* waiver with Esack. It also found the waiver explained the immigration consequences of the plea.

The court stated, "I believe with certainty [Hernandez] knew the immigration consequences. He was willing to take that risk. That was a rational decision. He could get out of jail. He could return to his kids. He could return to being a breadwinner for his family knowing he had the risk of deportation, but at least he was out of custody. And he took that risk."

The court also explained it had "serious concerns about [Hernandez's] credibility." The court's concerns stemmed from Hernandez's inability "to recollect what occurred at the time of the plea." The court noted Hernandez's failure to remember Esack's gender or to "even recall who the attorney was." The court's "serious concerns" were also based on Hernandez's admission that he "evidently lied to the court" during his plea hearing.

7

Hernandez timely appealed.

**DISCUSSION**

A. *Governing Principles*

Section 1473.7, subdivision (a)(1), "allows noncitizens who have served their sentences to vacate a conviction if they can establish by a preponderance of the evidence that their conviction is 'legally invalid due to prejudicial error damaging [their] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.'" (*People v. Espinoza* (2023) 14 Cal.5th 311, 316 (*Espinoza*); see § 1473.7, subd. (e)(1) ["The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)"].)

"A defendant seeking to set aside a plea must do more than simply claim he did not understand the immigration consequences of the plea. The claim must be corroborated by evidence beyond the defendant's self-serving statements." (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 664 (*Abdelsalam*); *People v. Vivar* (2021) 11 Cal.5th 510, 530 (*Vivar*) ["[W]e have long required the defendant [to] corroborate such assertions with "'objective evidence'""]; *People v. Mejia* (2019) 36 Cal.App.5th 859, 872 (*Mejia*) ["In a postconviction setting, courts should not simply accept a defendant's statement of regret regarding the plea, courts should also 'look to contemporaneous evidence to substantiate a defendant's expressed preferences'"].) "Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or

8

interactions with counsel, and evidence of the charges the defendant faced. [Citations.]" (*Espinoza, supra,* 11 Cal.5th at p. 321.)

B. *Standard of Review*

We independently review the trial court's ruling on a section 1473.7 motion. (*Vivar, supra,* 11 Cal.5th at p. 527.) "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that "'[i]ndependent review is not the equivalent of de novo review . . . ."' [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. . . . In section 1473.7 proceedings, appellate courts should . . . give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Vivar*, *supra*, at pp. 527–528; accord, *Espinoza, supra*, 14 Cal.5th at pp. 319–320.)

C. *Ability to Meaningfully Understand the Immigration Consequences*

Hernandez contends his conviction should be vacated because he did not meaningfully understand the immigration consequences. The record does not support Hernandez's contention.

"To prevail under section 1473.7 . . . [t]he defendant must first show that he did not meaningfully understand the immigration consequences of his plea. Next, the defendant must show that his misunderstanding constituted prejudicial error."[3] (*Espinoza, supra,* 14 Cal.5th at p. 319.) "[T]he focus of

---

[3] We do not reach the second step of the analysis because we conclude Hernandez failed to prove by a preponderance of the evidence that he was unable to meaningfully understand or defend against the immigration consequences.

the inquiry in a section 1473.7 motion is on the 'defendant's own error in . . . not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.'" (*Mejia, supra,* 36 Cal.App.5th at p. 871.)

We agree with the trial court that the contemporaneous evidence at the time Hernandez pled does not demonstrate his inability to meaningfully understand the immigration consequences. To the contrary, Hernandez acknowledged his understanding of the consequences on multiple occasions. He did so both in writing in the *Tahl* waiver and orally at the plea hearing.

The *Tahl* waiver Hernandez signed included an acknowledgment that he "read and initialed each of the paragraphs above and discussed them with [his] attorney" and he "underst[ood] and agree[d] with" each paragraph.

The "Immigration Consequences" paragraph advised Hernandez that he "must expect" his plea "will result" in "deportation, exclusion from admission or reentry to the United States, and denial of naturalization and amnesty." At the plea hearing, the court also advised Hernandez that the conviction "may result" in Hernandez's "being deported, excluded from admission, or denied naturalization pursuant to the laws of the United States." The court asked Hernandez if he understood the advisement and he replied, "yes."

Hernandez also acknowledged that he had "a full opportunity" to discuss the immigration consequences with his attorney. In both the *Tahl* waiver and at the end of the court's questioning during the plea hearing, Hernandez acknowledged he did not have any additional questions for his attorney or for the court.

Esack also signed the *Tahl* waiver on the date of the plea. Esack acknowledged she had advised Hernandez about the immigration

consequences of the plea. (*Abdelsalam, supra,* 73 Cal.App.5th at p. 663 [the defendant "is not entitled to simply ignore the admonitions he was given about the consequences of the plea, and argue that he unilaterally assumed he would be treated in direct contravention of what he was advised orally and in writing"].)

We agree with the trial court that Hernandez's assertion that he did not meaningfully understand the immigration consequences does not satisfy his evidentiary burden. The record does not contain any corroborating evidence to support Hernandez's self-serving statements made 18 years after his plea. (*Abdelsalam, supra,* 73 Cal. App. 5th at p. 664.)

We defer to the court's "serious" credibility concerns about Hernandez's ability to remember in 2022 what he understood about the immigration consequences in 2004. The court's doubts stemmed from Hernandez's inability to recall that Esack was a female after Hernandez referred to "the public defender" using male pronouns on multiple occasions. The court also doubted Hernandez's credibility because Hernandez admitted that he lied to the court at his plea hearing. (*Espinoza, supra,* 14 Cal.5th at p. 320 ["[w]hen [reviewing] courts engage in independent review, they must give deference to the trial court's factual determinations"]; *Vivar, supra,* 11 Cal.5th at pp. 527–528 [same].)

Hernandez also admitted that he was deported three times because of his conviction. After the first two deportations, he reentered the United States and appeared in court for probation violation hearings, four and five years after his conviction. Hernandez testified that he had never told anyone that he misunderstood the immigration consequences until he filed his motion 18 years after the plea. Hernandez's failure to communicate his

11

purported misunderstanding of the immigration consequences, even after he was deported three times, casts doubt on his credibility.

We therefore conclude Hernandez has failed to establish by a preponderance of the evidence that he was unable to meaningfully understand the immigration consequences of his plea.

D. *Ability to Defend Against the Immigration Consequences*

Hernandez also contends his conviction should be set aside because Esack failed to properly advise him of the immigration consequences. Hernandez argues Esack's error "affect[ed] his ability to meaningfully understand, defend against, and knowingly accept the immigration consequences of his plea and sentence." The record does not support these contentions.

As discussed, the *Tahl* waiver and Hernandez's testimony at the plea hearing demonstrate Esack advised Hernandez of the immigration consequences of his plea. Hernandez and Esack both signed the *Tahl* waiver containing their acknowledgments that Esack advised Hernandez of the immigration consequences.

The only evidence in the record about the substance of Esack's immigration advice is Hernandez's self-serving statements, 18 years after the plea. And the trial court had serious credibility concerns regarding Hernandez's ability to recall his discussions with Esack as he could not even remember who she was. Hernandez's contention that Esack failed to properly advise him of his immigration consequences therefore lacks merit. (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 223–224 ["An allegation that trial counsel failed to properly advise a defendant is meaningless unless

12

there is objective corroborating evidence supporting appellant's claimed failures"].)

Hernandez relies on *People v. Soriano* (1987) 194 Cal.App.3d 1470 (*Soriano*) to support his assertion that Esack failed to properly advise him. But *Soriano* is distinguishable because there, unlike here, there was objective, credible, corroborating evidence of defense counsel's improper advisement. (*Id*. at pp. 1479–1482 [granting writ of habeas corpus where a third party witnessed the discussion between the defendant and defense counsel and the third party's testimony corroborated the defendant's credible testimony of counsel's assurance that the defendant would have "no problem" with immigration as a result of his plea].)

Hernandez also argues that Esack failed to defend against the immigration consequences because she did not negotiate an immigration-neutral plea. This contention is also unsupported by the evidence.

The record is devoid of any evidence of the plea negotiations. The only evidence of the plea was the deal Hernandez ultimately signed. The record does not contain any testimony from Hernandez of plea negotiations.

Hernandez cites inapposite authority to support the proposition that Esack improperly failed to seek an immigration-neutral conviction. In *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 907, unlike here, the defendant presented objective, contemporaneous evidence of the plea negotiations. (*Ibid.* [the record contained defense counsel's notes at the time of the plea including details about the plea negotiations].)

We conclude Hernandez has not proved by a preponderance of the evidence that Esack failed to defend against the immigration consequences of the plea.

Hernandez also argues that a different public defender who represented him at the 2008 probation violation hearing failed to defend against the immigration consequences of the sentence imposed at that time. The argument of alleged errors at a hearing in 2008 is immaterial to Hernandez's motion to vacate only the 2004 conviction. We therefore do not address it.

## DISPOSITION

The trial court's order denying Hernandez's motion to vacate is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

WE CONCUR:


CURREY, P. J.


MORI, J.